FLORENCE JEAN CLEMMONS v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 16 June, 1966.)

1. **Insurance § 60—**

   In regard to an owner's liability policy providing insurance in addition to that required by the Motor Vehicle Safety and Financial Responsibility Act, as distinguished from an operator's liability policy required by that Act, G.S. 20-279.21, the provisions of the policy in regard to notice of claim or suit by an injured party are valid and enforceable, and the injured party who obtains judgment against the insured can have no greater rights against insurer than those of insured.

2. **Same—**

   Stipulation in a policy providing liability insurance in addition to that required by the Safety and Financial Responsibility Act, that insured should forward to insurer any demand, notice, summons or other process received by him or his representative is not ambiguous and is a reasonable and valid stipulation, and unless insured or his judgment creditor

can show compliance with this requirement, insurer is relieved of liability in the absence of waiver or estoppel.

**3. Trial § 22—**

Sufficiency of the evidence to overrule nonsuit must be considered in the context of plaintiff's allegations.

**4. Insurance § 60— Evidence held insufficient to show waiver by insurer of notice of suit against insured.**

Where plaintiff's evidence considered in the light most favorable to her, tends to show at most that insurer's agent was advised by telephone that suit by the plaintiff had been instituted and that insurer's agent made no comment in reply thereto, the evidence is insufficient to be submitted to the jury on the issue of insurer's waiver of provisions of the policy making it a condition precedent to liability that insured should immediately forward any demand, notice, summons or other process received by insured or his representative in regard to the institution of the action against insured by the injured third party, mere knowledge by insurer of the fact that process had been served upon insured not amounting, in itself, to a waiver or estoppel of the policy requirement.

**5. Waiver § 2—**

Waiver is an intentional surrender of an existing right or privilege on the part of a party having knowledge of such right or privilege.

MOORE, J., not sitting.

APPEAL by defendant from *Mallard, J.,* December 1965 Session of BRUNSWICK.

Plaintiff instituted this civil action October 28, 1964, to recover from Nationwide Mutual Insurance Company (Nationwide) the sum of $5,000.00, together with interest on $7,000.00 from September 25, 1964, and court costs, being a portion of a judgment for $12,000.00 and costs she obtained against Ruby B. King at August 1964 Session of Brunswick Superior Court.

The judgment on which plaintiff bases this action was before this Court in *Clemmons v. King,* 265 N.C. 199, 143 S.E. 2d 83, in connection with appeals relating to Mrs. King's cross action against Myrtle Clemmons Strickland, additional defendant, for contribution. The litigation grew out of a collision that occurred February 6, 1964, between an automobile owned by Eulene Lee and operated, with the permission of said owner, by Mrs. King, and an automobile operated by Mrs. Strickland in which plaintiff was a passenger.

The policies of liability insurance referred to below were in full force at the time of said collision on February 6, 1964.

Dixie Fire & Marine Insurance Company (Dixie) had issued to Mrs. Lee an owner's policy of liability insurance in which the car involved in said collision was designated the insured automobile. It provided coverage of $5,000.00 for bodily injury or death of one

person in one accident. This coverage (as required by G.S. 20-279.21(b)(2)), in addition to protecting the liability of Mrs. Lee, protected the liability of any other person operating the insured automobile with Mrs. Lee's express or implied permission. Dixie admitted its policy covered Mrs. King's liability (established by judgment) resulting from said collision and paid $5,000.00 to plaintiff, which was credited on said judgment.

Nationwide had issued to Mrs. King an owner's policy of liability insurance in which a car owned by Mrs. King, *not* involved in said collision, was designated the insured automobile. It provided coverage of $5,000.00 for bodily injury or death of one person in one accident. Its coverage, in addition to protecting the liability of Mrs. King while operating her own car, the insured automobile, protected liability incurred by her in her operation of a "non-owned" automobile. Under the caption, "Other Insurance," this policy, in pertinent part, provided: ". . . the insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Nationwide's policy, under the caption, "3. Notice," in pertinent part, provided: "If claim is made or suit is brought against the Insured, he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

Nationwide's policy, under the caption, "6. Action Against Company," in part, provided: "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy . . ."

The complaint alleged "the said Ruby B. King has fully complied with all of the terms of the said policy . . ."

Answering, Nationwide alleged, in brief summary, (1) that the insurance provided by its policy was "excess insurance," and (2) that Mrs. King failed to forward to it "any demand, notice, summons, or other process received by her or her representative," thereby failing to comply with a condition precedent to Nationwide's liability under its policy.

At trial, pursuant to stipulation, the complaint was amended by adding to paragraph 8 thereof the following: "If the Court should find that the said Ruby B. King failed to comply with that term of the insurance contract allegedly requiring the said Ruby B. King to 'forward to the company every demand, notice or summons received by her or her representative' then the defendant (Nationwide) waived said requirement after actual notice of the institution of Civil Action No. 5443 by failing and refusing to instruct the defendant (Mrs. King, defendant in said prior action) to whom or to

what address said papers should be delivered." The answer was amended so as to deny the allegations of said amendment to complaint.

The court submitted (in accordance with stipulation) and the jury answered the following issues:

"1. Did Ruby B. King comply with the terms of the insurance policy requiring her to notify the defendant of any suit arising under said policy and by forwarding to the company every demand, notice, summons or other process received by her or her representative? ANSWER: *No.*

"2. If not, did Ruby B. King notify the defendant of the institution of Civil Action No. 4543 immediately after receiving notice thereof and thereafter did the defendant waive the terms of said policy regarding the forwarding to the defendant company of every demand, notice, summons or other process received by her or her representative? ANSWER: *Yes.*"

The court, based on said verdict, entered judgment "that the plaintiff have and recover of the defendant the sum of FIVE THOUSAND AND No/100 ($5,000.00) DOLLARS, together with interest on the sum of Seven Thousand and no/100 ($7,000.00) Dollars from September 4, 1964, and for the cost of this action to be taxed by the Clerk."

Defendant excepted and appealed.

*Herring, Walton, Parker & Powell for plaintiff appellee.*
*W. G. Smith for defendant appellant.*

BOBBITT, J. The policy issued by Nationwide to Mrs. King contained all provisions of an owner's policy of liability insurance required by G.S. 20-279.21 as proof of the financial responsibility required by G.S. 20-309 *et seq.* The distinction between an owner's policy of liability insurance and an operator's policy of liability insurance, the required provisions of each being set forth in G.S. 20-279.21, is pointed out in *Howell v. Indemnity Co.,* 237 N.C. 227, 74 S.E. 2d 610, and *Lofquist v. Insurance Co.,* 263 N.C. 615, 140 S.E. 2d 12.

In *Woodruff v. Insurance Co.,* 260 N.C. 723, 133 S.E. 2d 704, the plaintiff had obtained judgment against the party to whom the defendant had issued an owner's assigned risk policy. Defendant based its defense on its policyholder's failure to give it notice of the accident as required by the policy. This Court, in opinion by Denny, C.J., said: "Our Financial Responsibility Act does not require an owner's assigned risk policy to cover any liability except that growing out of the operation of the motor vehicle described in the policy.

Consequently, the coverage in the policy issued by the defendant to Holbrook with respect to the use of other automobiles, was in addition to the coverage required by our Motor Vehicle Safety and Financial Responsibility Act. Therefore, with respect to such coverage, the policy makes the giving of notice a condition precedent to insurer's liability." In this connection, see also *Howell v. Indemnity Co., supra.*

G.S. 20-279.21(g) provides: "Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this article. With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section."

Since Nationwide's liability, if any, is based on "coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy," decision herein is governed by *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474, rather than by *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482.

This Court has held binding and enforceable provisions requiring that an insured give notice of an accident, *Muncie v. Insurance Co., supra,* and *Woodruff v. Insurance Co., supra,* and requiring the insured's cooperation in defense of any action against him, *Henderson v. Insurance Co.*, 254 N.C. 329, 118 S.E. 2d 885. Moreover, the cited cases establish that compliance with such policy provisions is a condition precedent to recovery, with the burden of proof on the insured to show compliance, where the policy, as in this case, provides, "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy," or words of like import. Moreover, with reference to an owner's policy of insurance, unless the action be based on policy provisions required by G.S. 20-279.21, as in *Swain v. Insurance Co., supra,* an injured party who obtains a judgment against the insured has no greater rights against the insurer than those of the insured. *Muncie v. Insurance Co., supra,* and cases cited; *Woodruff v. Insurance Co., supra.*

While no decision of this Court involving a policy provision, "If claim is made or suit is brought against the Insured, he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative," has come to our attention, decisions in other jurisdictions hold this is an unambiguous, reasonable and valid stipulation, and that, unless the insured or his judgment creditor can show compliance by the insured

with this policy requirement, the insurer is relieved of liability. *Potter v. Great American Indemnity Co. of N. Y.*, 55 N.E. 2d 198 (Mass.); *Nevil v. Wahl*, 65 S.W. 2d· 123 (Mo.); *Boyle Road & Bridge Co. v. American E. Ins. Co.*, 11 S.E. 2d 438 (S.C.); *Donlon v. American Motorists Ins. Co.*, 147 S.W. 2d 176 (Mo.); *reh. den.*, 149 S.W. 2d 378 (Mo.); *Sims TV, Inc. v. Fireman's Fund Insurance Company*, 131 S.E. 2d 790 (Ga.); *Wilkerson v. Maryland Cas. Co.*, 119 F. Supp. 383 (E.D. Va.), *aff. sub. nom. Maryland Casualty Co. v. Wilkerson*, 210 F. 2d 245 (4 Cir.); *De Vigil v. General Accident Fire & Life Assurance Co.*, 146 F. Supp. 729 (D. Hawaii); Annotation, 18 A.L.R. 2d 443, 450; 7 Am. Jur. 2d, Automobile Insurance § 185; 45 C.J.S., Insurance § 1047.

As stated by Frankum, J., in *Employees Assurance Society v. Bush*, 123 S.E. 2d 908 (Ga.): "In order to hold the insurer liable for damages under the policy, provisions of the policy place upon the insured the duty of complying with two conditions: first, to notify the company of the accident, and second, to forward to the insurer every demand, notice, summons, or process received by him or his representative. The purpose is to inform the insurer of the occurrence of the two events." In *Potter v. Great American Indemnity Co. of N. Y., supra,* Wilkins, J., said: "It is none the less a breach notwithstanding the fact that the company received prompt written notice of the accident under another condition of the policy. These were separate and distinct undertakings by the insured. (Citation). It is not for the plaintiff to assert that the company may not have been prejudiced by failure to receive the summons 'immediately' as stipulated."

"An automobile liability insurer may, by waiver or estoppel, lose its right to defeat a recovery under a liability policy because of the insured's failure to comply with the policy provision as to the forwarding of suit papers." 7 Am. Jur. 2d, Automobile Insurance § 188; 45 C.J.S., Insurance § 1058; Annotation, 18 A.L.R. 2d 443, 487. The subject of waiver will be discussed later with specific reference to the facts in evidence.

Defendant excepted to and assigns as error the denial of its motion at the conclusion of all the evidence for judgment of nonsuit. See G.S. 1-183; *Murray v. Wyatt*, 245 N.C. 123, 128, 95 S.E. 2d 541. Decision with reference thereto requires consideration of the evidence in the light of the foregoing legal principles.

Plaintiff's evidence, apart from the testimony of Ruby B. King, judgment debtor and Nationwide's policyholder, and of Sylvia P. Edwards, consists of the testimony, on adverse examination prior to trial, of Stanley J. Wiemer, H. F. Snevel and William J. Martin;

and of the testimony, on adverse examination at trial, of Robert L. Triplett, James Edward Harrington and E. J. Sealey.

The testimony of Mrs. Edwards, a court reporter, related solely to features of the trial of the prior action, including identification of the attorneys who appeared therein.

The adverse examination of Wiemer, Resident Vice President of Nationwide, was exploratory in nature and resulted in no pertinent discovery. Hence, no further reference will be made to Wiemer's testimony. The testimony elicited on the other adverse examinations is summarized, except when quoted, as set out below.

After notice of the collision of February 6, 1964, investigation thereof was assigned by Nationwide to Sealey, its District Office Manager in Wilmington. On or about February 13, 1964, Sealey assigned the investigation to M. E. Gooch and Associates (Gooch), independent claims adjusters of Wilmington. Triplett, Claims Manager for Gooch, assigned the field investigation to Harrington, an employee of Gooch. Statements were obtained (recorded in Harrington's phraseology and handwriting) from Florence Jean Clemmons, Myrtle Clemmons Strickland, Eulene Lee, Rufus Vonnie King, Ruby Blanton King and Jimmy Lee Maggard.

Triplett's initial report dated February 25, 1964, advised Nationwide that Mrs. Clemmons "had sustained very minor injuries" and, based on Gooch's evaluation of the claim, stated: "Her injuries are such that settlement certainly can be made within the initial or primary coverage and we should not be involved, and therefore we are not suggesting a BI reserve." (Note: "BI" is the abbreviation for Bodily Injury.)

Gooch's said report also advised Nationwide that Mr. Ray Walton was representing Mrs. Clemmons. The report contained the following: "Your insured and her family, which were the occupants of the insured unit at the time, are represented by Attorney Bunn Frink of Southport, North Carolina."

Gooch closed its investigation on February 28, 1964. Thereafter, on March 2, 1964, Triplett sent to Nationwide a hospital bill relating to Mrs. King's injuries, and on March 20, 1964, a medical report relating to Mrs. Strickland's injuries. The Gooch reports were filed with Martin, a claims examiner for Nationwide in Raleigh. Until a suit is instituted, a "claims examiner" or "division claims manager" has supervision of claims.

Snevel was an assistant claims attorney. On the day of the trial of the plaintiff's action against Mrs. King and Mrs. Lee, and a short time prior to the commencement thereof, Mr. Frink advised the Raleigh office of Nationwide of the pending action and of the imminent trial thereof. Prior to receiving information of Mr. Frink's

said message, Snevel had heard nothing of the suit or of the "open claim," the file with reference to the "open claim" being under the supervision of (claims examiner) Martin.

According to Snevel, Nationwide had no regularly retained counsel at Southport. It retained counsel to defend actions against its insureds on a case by case basis. Sometimes it had "hired" Mr. Frink, sometimes Mr. Smith (counsel for Nationwide in the present action) and sometimes other counsel to represent its insureds in Brunswick County.

Evidence admitted over defendant's objection tended to show Mr. Joshua S. James, a Wilmington attorney, and Mr. Frink, a Southport attorney, had represented and defended Mrs. King and Mrs. Lee at August 1964 Session at the trial of plaintiff's said prior action. Questions were asked, and exhibits were offered and later stricken, the general purport of which was to leave the impression that Mr. Frink or Mr. James or both were retained by Nationwide to represent Mrs. King in said action and represented her pursuant to employment by Nationwide. However, no legitimate inference to that effect may be drawn from any facts in evidence. Moreover, there is no allegation that such was the case and no suggestion in the court's charge that plaintiff sought to recover herein on that theory.

The other evidence consisted of the testimony of Mrs. King, a witness for plaintiff, and of the testimony of Braxton L. Prevatte, defendant's agent at Whiteville, North Carolina, from whom Mrs. King purchased the Nationwide policy. Prevatte was the only witness offered by defendant. Both testified that Mrs. King reported the accident to Prevatte a few days after its occurrence on February 6, 1964. In other respects, their testimony was in conflict.

Prevatte testified in substance: He advised Mrs. King, when she called him and reported the accident, that he would notify the Claims Department of Nationwide and they would take care of it. Thereupon, he communicated the information Mrs. King had given him to Nationwide. Prevatte recalled no further conversation with Mrs. King concerning the matter.

Since contradictions and discrepancies must be resolved in favor of plaintiff, we must turn to and accept as true the testimony of Mrs. King. Her testimony, summarized except when quoted, was as follows: Shortly after her original report of the accident, she telephoned Prevatte again. In this conversation, she advised him she had been tried in Recorder's Court for a traffic violation and had been found not guilty. This (second) telephone conversation occurred before Mrs. Clemmons started her suit. She called Prevatte a third time, when she was "sued"—when she "got the paper."

Testimony of Mrs. King with reference to this (third and last) telephone conversation, which bears directly on the crucial question for decision, was as follows: "I called him (Prevatte) on that occasion at his office in Whiteville. Exactly what I told him when I called him was that I had been sued. He did not say anything to me. I just told him that. He didn't say anything. Yes, sir, I told him who I was when he answered the phone. I said this is Mrs. Ruby King, I have been sued by Jean Clemmons, that is right. No, sir, he did not make any comment to me at all. I then hung up. Yes, sir, I knew Mr. Prevatte pretty well. As to whether or not I know of my own knowledge that I was actually talking to Mr. Prevatte, I say it sounded like his voice and I have been to his office several times. I don't remember approximately how long it was after I got the suit papers that I called and talked to someone that sounded like Mr. Prevatte. The best estimate I could give you is it was within a week. I took the suit papers to my lawyer. That was Mr. Bunn Frink." Again: "I never did send the suit papers to my own insurance company, Nationwide. I have the original policy somewhere at the house." Again: "After I gave the suit papers to Mr. Frink, I did not call Mr. Prevatte any more after that. I did not call any person connected with Nationwide Insurance Company after I gave the suit papers to Mr. Frink or tell them I had been sued or had any papers, no, sir."

Nationwide makes no contention it did not receive timely notice of the accident. On the contrary, it admits it received such notice and caused an investigation to be made. It contends such investigation indicated Mrs. King's liability, if any, for Mrs. Clemmons' injuries, was within the coverage provided by Dixie's policy on Mrs. Lee's car. Its asserted ground of defense is that Mrs. King did not comply with the pleaded policy provision.

All the evidence, including the testimony of Mrs. King, tends to show Mrs. King did not "forward to the Company every demand, notice, summons or other process received by (her) or (her) representative," in plaintiff's said prior action. Indeed, her testimony is that she delivered the papers that were served on her in plaintiff's prior action, presumably the summons and complaint, to her own attorney, Mr. Frink. Hence, the court correctly directed the jury to answer the first issue, "No." Nothing else appearing, this negative answer to the first issue defeats plaintiff's asserted right to recover herein.

Decision as to nonsuit depends upon whether plaintiff's allegations and evidence with reference to waiver were sufficient to withstand defendant's motion. Plaintiff alleged the requirement that Mrs. King "forward to the Company every demand, notice, sum-

mons or other process received by (her) or (her) representative" was waived by defendant "by failing and refusing to instruct the defendant (*i.e.,* Mrs. King) to whom or to what address said papers should be delivered." The evidence must be considered in the context of plaintiff's allegations in passing upon whether it was sufficient for submission to the jury. *Faison v. Trucking Co.,* 266 N.C. 383, 146 S.E. 2d 450.

It is noted that plaintiff relies primarily on her (according to her testimony) third telephone conversation with Prevatte. There is no evidence Prevatte refused to answer any inquiry or that he failed to comply with any request or that he gave Mrs. King any misleading directions or instructions. Mrs. King's testimony indicated (somewhat uncertainly) that she knew she was talking to Prevatte because "it sounded like his voice." Her testimony, considered in the light most favorable to plaintiff, is to the effect she advised Prevatte she had been sued and that suit papers had been served on her. Notwithstanding, she insisted that "he (Prevatte) did not make any comment to (her) at all."

In *Hospital v. Stancil,* 263 N.C. 630, 139 S.E. 2d 901, distinctions between estoppel and waiver are pointed out by Sharp, J. Compare *Boyle Road & Bridge Co. v. American E. Ins. Co., supra.* Suffice to say, plaintiff's allegations relate to waiver, not to estoppel.

Ordinarily, waiver is defined as a voluntary and intentional relinquishment of a known right. In *Hospital v. Stancil, supra,* waiver is defined as "the intentional surrender of a known right or privilege, which surrender modifies other existing rights or privileges or varies the terms of a contract." In *Fetner v. Granite Works,* 251 N.C. 296, 302, 111 S.E. 2d 324, Moore, J., in accord with 56 Am. Jur., Waiver § 12, stated: "The essential elements of a waiver are: (1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit."

In *Boyle Road & Bridge Co. v. American E. Ins. Co., supra,* with reference to a similar policy provision, Fishburne, J., stated: "(I)n our opinion mere knowledge by the Insurance Company of the fact that process has been served upon the insured does not of itself amount to a waiver or an estoppel. There must exist, in addition to such knowledge, where the papers have not been forwarded to the Insurance Company as provided in the contract, some positive act upon which, in connection with the knowledge, a waiver may be predicated. And this positive act must be known to the insured." In accord: *Nevil v. Wahl, supra; De Vigil v. General Accident Fire & Life Assurance Co., supra.*

Consideration of the evidence in the light most favorable to plaintiff impels the conclusion that Prevatte's *silence,* when advised that Mrs. King had been sued, is insufficient to support a finding that Nationwide thereby knowingly and intentionally waived its rights under the contract provision pleaded by defendant. Defendant's motion for judgment of nonsuit should have been granted. Accordingly, the judgment of the court below is reversed.

Reversed.

MOORE, J., not sitting.