CHARLES A. JONES, PLAINTIFF, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT.

(Filed 20 June, 1967.)

**1. Insurance § 53.2—**

     The Motor Vehicle Financial Responsibility Act is a remedial statute and must be liberally construed to effectuate its purpose to provide compensation for innocent victims injured by financially irresponsible motorists.

**2. Same—**

     Policy violations which would constitute a valid and complete defense in regard to coverage in excess of, or not required by, the Motor Vehicle Financial Responsibility Act, do not constitute a defense in regard to compulsory coverage required by the statute, and as to compulsory coverage no violation of policy provisions by the insured after the infliction of damages for which insured is legally responsible can exonerate insurer. G.S. 20-279.21(f)(1).

**3. Insurance § 60—**

     Failure of insured under an assigned risk policy to give notice of suit to insurer does not avoid liability of insurer to the party injured by the negligence of insured.

**4. Insurance § 64—**

Provision of an assigned risk policy that no action should lie against insurer until insured's liability had been established by agreement signed by all the parties or by final judgment after trial, cannot preclude action against insurer after judgment properly obtained against insured through approved legal procedure, as by default, although insurer's liability may not be predicated on a judgment obtained against insured by consent or through collusion.

**5. Constitutional Law § 24—   Requirement that insurer doing business in this State issue proportionate share of assigned risk policies is constitutional.**

An insurer who has been required to issue an assigned risk policy in accordance with statutory provisions for the apportionment of assigned risk policies among insurers doing business in this State, G.S. 20-279.34, is not denied due process in violation of the Fourteenth Amendment of the Federal Constitution or in violation of Article I, §§ 1 and 17 of the State Constitution, in being required to pay the injured third party the amount of damages established by a judgment by default obtained against its insured in an assigned risk policy, G.S. 20-279.21(f)(1), even though insurer had no notice of the accident or the action against its insured, nothing else appearing and there being no question of collusion between insured and the injured third party.

PARKER, C.J., concurs in the result.

PLESS, J., dissents.

APPEAL by defendant from *Hasty, Special Judge,* May 16, 1966 Schedule C Civil Session of MECKLENBURG.

Defendant's appeal is from a judgment which, after recitals, including a recital that the parties had waived jury trial, provides:

"And the Court after having considered the evidence and stipulations of counsel, and the contentions of the parties relative thereto, finds the following facts:

"1.   That the plaintiff is an individual and a citizen and resident of Mecklenburg County, North Carolina, and the defendant is a corporation duly organized and existing and has an office and place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, and the defendant is an insurance company engaged in the business of writing policies of insurance, including automobile liability insurance and is licensed to do business in the State of North Carolina.

"2.   That the plaintiff and defendant are properly before the Court and the Court has jurisdiction over the parties and subject matter.

"3.   That the defendant issued and delivered for valuable consideration to Harold Leon Brown, a policy of liability insurance which was an assigned risk policy; that the defendant's policy num-

ber was 801-231-B20-33, insuring a 1955 Chevrolet automobile of said Harold Leon Brown; that said policy was a motor vehicle liability insurance policy as defined in G.S. 20-279.21 and was issued under the assigned risk plan as provided for in G.S. 20-279.34; that said policy issued to Harold Leon Brown covered Harold Leon Brown's 1955 Chevrolet automobile with limits of $5,000.00, $10,000.00, and $5,000.00 and was in full force and effect on October 21, 1964.

"4.  The North Carolina Automobile Assigned Risk Plan itself is a set of rules and regulations which were agreed upon by the insurance companies and approved by the Commissioner of Insurance pursuant to G.S. 20-279.34, under which the North Carolina Automobile Rate Administrative Office and Manager of the North Carolina Automobile Assigned Risk Plan assign applications for liability insurance according to a quota system, submitted by people who have been denied liability insurance in the voluntary market, to companies licensed to write such insurance in North Carolina in such a manner that each insuror will receive the same proportion of 'private passenger non fleet automobile assigned risk premiums' that its respective 'voluntary private passenger net direct written car years' bears to the statewide total of the voluntary passenger direct written car years of all insurors in the State and so that each insuror will receive the same proportion of all other assigned risk premiums that its respective net direct 'all other automobile liability premiums' bear to the total of such 'all other' premiums of all insurors in the State.

"5.  For persons who purchase their automobile liability insurance through the Assigned Risk Plan, the rates are exactly the same for the same coverage limits and for the same individuals under the same circumstances whether the insurance is written through the Plan or voluntarily in the regular market.

"6.  That said policy of insurance to said Harold Leon Brown contained, *inter alia,* the agreements as follows:

'To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death, resulting therefrom sustained by any person — arising out of the ownership, maintenance or use of the automobile.'

"And to pay on behalf of said insured all sums which the insured shall become legally obligated to pay as damages because of property damage sustained by any person arising out of the ownership, maintenance or use of said Chevrolet automobile by said Brown, the insured of defendant insurance corporation.

"7.  The policy of insurance issued by the defendant to Brown

also contained the following condition with respect to notice of accident:

> 'Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable . . . If claim is made or suit is brought against the insured he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.'

"8. That Charles A. Jones instituted suit against Harold Leon Brown in Mecklenburg Superior Court on or about the 4th day of November, 1964, alleging that due to and as a direct and proximate result of the negligence of Harold Leon Brown, and the resulting collision, the plaintiff sustained personal injuries and damages to his automobile; that said complaint and summons were duly served on the defendant, Harold Leon Brown, by the Sheriff of Mecklenburg County on the 5th day of November, 1964. That Harold Leon Brown did not report the accident to his insurance carrier, the defendant, State Farm Mutual Automobile Insurance Company, and did not notify said insurance company that suit had been instituted against him; that Harold Leon Brown did not file Form SR-1 and SR-21 with the Department of Motor Vehicles of North Carolina.

"9. Plaintiff duly filed with the Department of Motor Vehicles of North Carolina the form commonly called the 'blue form' or officially designated as 'Driver's Report of Motor Vehicle Traffic Accident,' Form SR-1 and SR-21.

"10. That in the month of February, 1965, a Judgment by Default and Inquiry was duly entered against said Brown and in favor of said Jones; thereafter in due course, the Jury awarded damages against Harold Leon Brown and in favor of the plaintiff in the amount of $5,000.00 for personal injuries and $300.00 for property damages.

"11. Thereafter, plaintiff's attorney advised the defendant, State Farm Mutual Automobile Insurance Company, at its offices in Charlotte, North Carolina, that plaintiff had obtained final Judgment against said Harold Leon Brown and made due demand for payment of same; that execution on said Judgment obtained on the 15th day of February, 1965, was returned unsatisfied by the Sheriff of

Mecklenburg County, North Carolina, and still remains unsatisfied.

"12. That the legal liability of Harold Leon Brown for damages because of the personal injuries and property damages arising out of the use of the insured automobile has been finally determined by the aforesaid Judgment and the defendant has not paid or tendered payment of any part of the said Judgment against the insured.

"13. That at the calendar call of the 26th Judicial District on Friday, February 12, 1965, the case of *Charles A. Jones vs. Harold Leon Brown*, S.D. No. 53-745, was called by said calendar committee and placed on the trial calendar for the week beginning February 15, 1965, and the said trial calendar was published on the bulletin board in the office of the Clerk of Mecklenburg Superior Court in the County Court House at Charlotte, North Carolina, and on the bulletin board in the Law Building in Charlotte, North Carolina, said bulletin boards being in a conspicuous place in each of said buildings.

"14. That had any one communicated with the Personal Responsibility Section, Attention Mr. Donald N. Freeman, Supervisor, of the Department of Motor Vehicles of North Carolina, prior to February 15, 1965, the date of the Judgment against Harold Leon Brown in the case of S.D. No 53-745, making inquiry as to the name and address of the liability insurance carrier of Harold Leon Brown as of October 21, 1964, said person, firm or corporation would have been advised that according to the records of said Safety Responsibility Section of the Department of Motor Vehicles there was no 'automobile liability insurance in effect at the time of the accident,' to wit, October 21, 1964, covering said Harold Leon Brown and his said 1955 Chevrolet automobile and such person, firm, or corporation would have been advised to communicate with Miss Alma Cates, Financial Security Section of said Department of Motor Vehicles, with regard to any FS-1 filing on behalf of said Harold Leon Brown; that said Miss Alma Cates, if present in Court, would testify in her official capacity as an employee of the Financial Responsibility Section of said Department, that had any person, firm, or corporation communicated with or contacted her at any time between October 21, 1964, and February 15, 1965, inquiring as to the name and address of the insurance company furnishing coverage for Harold Leon Brown and his said 1955 Chevrolet automobile, she would have replied that according to the records of the Department of Motor Vehicles of North Carolina, there was no insurance coverage by any liability insurance company of Harold Leon Brown and his said 1955 Chevrolet automobile for the reason that the FS-1 made

a part of the Complaint, was not prepared or filed with the Department of Motor Vehicles of North Carolina until February 22, 1965.

"15. Information pertaining to a person's liability insurance through the North Carolina Automobile Assigned Risk Plan is available only to the named insured, the insured's producer of record, and the insurance company involved and the North Carolina Department of Motor Vehicles and that this is due to the fact that the records of the Assigned Risk Plan are not public records.

"16. The specific vehicle described in the said policy issued by defendant insurance company under the Assigned Risk Plan was the vehicle involved in the collision with plaintiff's automobile.

"17. That the defendant sells and writes a large volume of automobile liability insurance in North Carolina, among which is its legally required share of assigned risk automobile liability policies under G.S. 20-279.34; that the assigned risk portion of defendant's business in North Carolina, when considered separate and apart from all other automobile liability insurance business it does in North Carolina, has not been profitable and defendant has lost money thereon which makes this type of business undesirable.

"18. Defendant in its first pleading filed in this cause and thereafter has maintained the position that to require it to pay the Judgment entered against Brown without notice and opportunity to defend the suit commenced against him by Jones, taken in connection with the fact that it was required to accept Brown as an insured under G.S. 20-279.34, would be to deprive the defendant of its property without due process of law and otherwise than by the law of the land in contravention of the Constitution of the United States of America and of the State of North Carolina.

"19. The parties have stipulated that the only question to be decided in this case is the constitutionality of G.S. Secs. 20-279.21(f) and 20-279.34 as applied to the facts set forth in this case.

"Upon the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

"1. The liability of the defendant insurance carrier under said insurance policy became absolute when the loss or damage to plaintiff occurred, to wit, October 21, 1964, the time of the collision of plaintiff's Pontiac automobile and Brown's Chevrolet automobile.

"2. Subsequent violations of the terms of the insurance policy by the insured, Harold Leon Brown, cannot and did not operate to defeat or avoid the said policy so as to bar recovery by plaintiff within the limits provided by the Act; that Harold Leon Brown, the insured's, failure to comply with the said insurance policy provisions

and to notify the defendant, State Farm Mutual Automobile Insurance Company, of the accident and the law suit did not defeat plaintiff's right to recover from said defendant the amount of the Judgment by which Harold Leon Brown's legal obligation to plaintiff was finally determined.

"3. That G.S. 20-279.21 and G.S. 20-279.34 and the regulations of the Commissioner of Insurance issued pursuant thereto do not within the meaning of the Fourteenth Amendment to the Constitution of the United States and Sections 1 and 17 of Article I of the Constitution of North Carolina, deprive the defendant, State Farm Mutual Automobile Insurance Company, of its property without due process of law, nor are such statutes and regulations unreasonable, arbitrary, capricious, nor do they work a penalty or forfeiture against the defendant, which constitutes an unreasonable burden upon the exercise of the lawful business of the defendant.

"It Is, Therefore, Ordered, Adjudged, and Decreed that the plaintiff have and recover of the defendant the sum of $5,300.00 plus interest from February 15, 1964, the costs of the Court in the action entitled 'Charles A. Jones vs. Harold Leon Brown' and the costs of this action, to be taxed by the Clerk."

Defendant excepted (1) to the court's failure to make additional findings of fact as requested by defendant, and (2) to each of the court's conclusions of law, and (3) to the signing and entry of the judgment.

*Elbert E. Foster and Nick J. Miller for plaintiff appellee.*

*Carpenter, Webb & Golding for defendant appellant.*

*Attorney General Bruton and Assistant Attorney General Harrell for the State as amici curiæ.*

Bobbitt, J. The Vehicle Financial Responsibility Act of 1957, G.S. Chapter 20, Article 13, requires *every* owner of a motor vehicle, as a prerequisite to the registration thereof, to show "proof of financial responsibility" in the manner prescribed by the Motor Vehicle Safety and Financial Responsibility Act of 1953, G.S. Chapter 20, Article 9A. G.S. 20-314.

The manifest purpose of the 1957 Act was to provide protection, within the required limits, to persons injured or damaged by the negligent operation of a motor vehicle; and, in respect of a "motor vehicle liability policy," to provide such protection notwithstanding violations of policy provisions by the owner subsequent to accidents on which such injured parties base their claims. *Swain v. Insurance Co.*, 253 N.C. 120, 126, 116 S.E. 2d 482, 487. "The primary pur-

pose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists." *Insurance Co. v. Roberts,* 261 N.C. 285, 290, 134 S.E. 2d 654, 659. The 1957 Act is a remedial statute and will be liberally construed "to carry out its beneficent purpose of providing compensation to those who have been injured by automobiles." 7 Am. Jur. 2d, Automobile Insurance § 6; *Moore v. Insurance Co., post,* 532, 155 S.E. 2d 128.

When sued by plaintiff, Brown did not turn over to defendant either the summons or the complaint; nor did he notify defendant that he had been sued. With reference to accidents occurring prior to the effective date of the 1957 Act, such policy violations would constitute a valid and complete defense. *Muncie v. Insurance Co.,* 253 N.C. 74, 116 S.E. 2d 474, and cases cited; *Clemmons v. Insurance Co.,* 267 N.C. 495, 148 S.E. 2d 640. The law as stated in *Muncie* and in *Clemmons* is presently applicable to coverage "in excess of or in addition to the coverage specified for a motor vehicle liability policy" as defined in G.S. 20-279.21. In this connection, see G.S. 20-279.21(g). However, as to the *compulsory coverage* provided by a "motor vehicle liability policy," as defined in G.S. 20-279.21, issued as "proof of financial responsibility" as defined in G.S. 20-279.1, the statute provides explicitly that "no violation of said policy shall defeat or void said policy." G.S. 20-279.21(f)(1). The policy here under consideration provides such compulsory coverage and no more.

If defendant had voluntarily issued its "motor vehicle liability policy" to Brown, *Swain v. Insurance Co., supra,* and *Lane v. Insurance Co.,* 258 N.C. 318, 128 S.E. 2d 398, would control decision and require affirmance. Also, see *Royal Indemnity Co. v. Olmstead,* 193 F. 2d 451, 31 A.L.R. 2d 635, and Annotation, 31 A.L.R. 2d 645 *et seq.* The factual situations in *Swain* and in the present action are alike in all essentials except that in *Swain* the policy was issued voluntarily and here the policy was issued as an assigned risk policy. Relevant to the constitutional questions raised in *Swain,* this Court said: "When defendant voluntarily issued its policy to Owens, it did so with full knowledge that the provisions of G.S. 20-279.21 (f)(1) became a part thereof as fully as if written therein; and, having voluntarily assumed the risk, it may not challenge the constitutionality of the statutory provisions." In *Lane,* although the policy was referred to as an assigned risk policy, the constitutional question with reference thereto which the defendant attempted to raise *for the first time* in this Court was not decided or discussed. *Lane* was decided on authority of *Swain.*

The question for decision is whether G.S. 20-279.21(f)(1) when

applied to an assigned risk policy issued in compliance with the plan set forth in G.S. 20-279.34 and regulations pursuant thereto "deprives the defendant of its property without due process of law and otherwise than by the law of the land in contravention of the Fourteenth Amendment to the Constitution of the United States of America and Sections 1 and 17 of Article I of the Constitution of North Carolina."

All briefs refer to this question as one of first impression.

The pleadings herein raise no issues as to Brown's actionable negligence or as to the extent of plaintiff's injuries. The question presented is whether plaintiff is entitled to recover from this defendant the amount of the judgment plaintiff obtained against Brown. Defendant contends that the judgment of the court below, which requires that it pay the amount of plaintiff's judgment against Brown notwithstanding it had no notice of or opportunity to defend said action, constitutes a denial of his constitutional right to procedural due process.

We consider first whether plaintiff could have instituted and maintained an action against defendant otherwise than on the judgment he obtained against Brown.

In the Annotation, "Joinder of insurer and insured under policy of compulsory indemnity or liability insurance in action by injured third person," in 20 A.L.R. 2d 1097, at p. 1102, the author states: "In the absence of particular statutory or policy provisions which in some instances have induced the courts to depart therefrom, the prevailing rule is that the insurer under a *compulsory* insurance policy may be joined as a defendant with the insured in an action by an injured third person, on the theory that, under the statutes requiring and controlling *compulsory* insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer." (Our italics.)

With reference to required coverage provided for the protection of the public by carriers operating under the authority of licenses granted by the North Carolina Utilities Commission, G.S. 62-274 provides that no "insurance company or surety executing any insurance policy, bond, or other security for the protection of the public, as provided in § 62-268, or as provided in § 62-112, (shall) be joined with the assured carrier in any action or suit for damages, debt, or claim thereby secured . . ." In connection with such carriers, attention is directed to *Harrison v. Transit Co.*, 192 N.C. 545, 135 S.E. 460, and *Williams v. Motor Lines*, 195 N.C. 682, 143 S.E. 256. In *Harrison*, based on a 1925 statute, it was held that a judgment against the carrier was not a prerequisite to a suit on the

policy or bond, and that it was proper for plaintiff to join the insured carrier and its insurer in the same action. In *Williams*, in accordance with the express provisions of the 1927 Act referred to therein, which repealed the 1925 Act on which *Harrison* was based, it was held that the insurer could not be joined in an action against the insured.

In *Watson v. Employers Liability Assur. Corp.*, 348 U.S. 66, 99 L. Ed. 74, 75 S. Ct. 166, the Louisiana statute there under consideration gave an injured person a right of direct action against the insurer *before* final determination of the insured's obligation to pay, and expressly recognized, as to injury occurring in Louisiana, such right of direct action irrespective of whether the policy sued upon was written or delivered in Louisiana, and notwithstanding it contained a clause forbidding such direct action. The statute also required that a foreign insurance company consent to such direct action in order to obtain a certificate to do business in the state. It was held that this statute did not violate the due process clause of the Fourteenth Amendment in respect of an injury occurring in Louisiana even though the particular policy was negotiated, issued and delivered in another state.

We find no North Carolina statute other than G.S. 62-274, quoted above, authorizing or prohibiting a suit against a liability insurer alone or jointly with its insured by a person allegedly injured by the negligence of the insured. Whether, in the absence of a controlling statutory or policy provision plaintiff could have sued defendant alone or jointly with Brown in an action to determine Brown's liability, if any, to plaintiff, is not presented.

The policy issued by defendant to Brown contains the following provisions: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

Under the insuring agreements of the policy, defendant became obligated "(t)o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" because of personal injuries or property damage caused by accident and aris-

ing out of the ownership, maintenance or use of the insured automobile.

As provided in G.S. 20-279.21(f)(1), this liability became absolute when plaintiff's injury and damage occurred notwithstanding Brown's subsequent violations of his obligations to defendant under the policy provisions. Brown's liability to plaintiff was established by a judgment obtained in accordance with approved legal procedure. As between plaintiff and Brown, all requirements of due process were met. The provision in the "no action" clause with reference to judgment "after actual trial" is valid only when construed as a defense to a judgment obtained against an insured by consent or through collusion. Although invalid in the respects and to the extent indicated, we are of opinion, and so decide, that the "no action" clause precludes an injured person from instituting and maintaining an action against the insurer otherwise than on a judgment properly obtained against the insured through approved legal procedure.

Defendant elected to incorporate the quoted provision in the policy it issued to Brown. By reason thereof, plaintiff had no right to institute and maintain an action against defendant unless and until Brown's liability to plaintiff had been determined *by judgment*.

As required by the policy provisions, plaintiff sued and obtained judgment against Brown in accordance with approved legal procedure. Unless and until set aside, this judgment constituted a final adjudication and determination of Brown's legal liability to plaintiff. In this connection, see *Sanders v. Chavis*, 243 N.C. 380, 90 S.E. 2d 749; also, *Sanders v. Travelers Indemnity Company*, 144 F. Supp. 742 (M.D.N.C.). The record discloses no ground on which defendant can defeat Brown's obligation to plaintiff.

We see no reason why defendant cannot, if it so desires, delete its "no action" clause from assigned risk or other policies providing coverage within the compulsory limits. Too, we refrain from discussing possibilities with reference to the adoption of new statutory or policy provisions that would assure notice to defendant of the pendency of an action against its insured before a judgment that would bind defendant could be entered. These are matters to be considered by defendant and its counsel in the light of all relevant factors.

Plaintiff, in compliance with the provisions of the policy issued by defendant to Brown, pursued the only remedy available to him, that is, an action against Brown in which he obtained judgment establishing Brown's legal liability to him. Defendant is obligated to discharge Brown's liability as established by said judgment. The

fact that defendant had no knowledge or notice of plaintiff's action against Brown before judgment had been entered does not constitute a denial of procedural due process.

There remains for consideration whether the judgment of the court below denies to defendant its constitutional right to substantive due process. G.S. 20-279.21(f)(1), as interpreted and applied by this Court, deprives it of defenses otherwise available under its (standard) policy provisions. Defendant contends the requirement that it be so bound by a policy issued on a risk it did not voluntarily accept constitutes a denial of substantive due process.

The Assigned Risk Plan authorized by G.S. 20-279.34 is "for the equitable apportionment" among insurance carriers licensed to write motor vehicle insurance in this State or "those applicants for motor vehicle liability policies who are required to file proof of financial responsibility under this article (9A) but who are unable to secure such insurance through ordinary methods." All insurance carriers, as a prerequisite to engaging and writing such insurance in this State, must subscribe to, and participate in, the plans and procedures constituting the assigned risk plan.

In *California Auto. Asso. v. Maloney*, 341 U.S. 105, 95 L. Ed. 788, 71 S. Ct. 601, it was held that the provisions of a compulsory assigned risk law of California did not violate the due process clause of the Fourteenth Amendment. The basic factual situation is well summarized by the reporter (L. Ed.) as follows: "The right of an insurance association to do business in California was revoked for its failure to comply with a statute which made it mandatory on all automobile liability insurers to subscribe to a plan for the equitable apportionment among such insurers of applicants who are in good faith entitled to but are unable to procure such insurance through ordinary methods." The plaintiff having failed to subscribe to such plan, the Insurance Commissioner had suspended its license to transact automobile liability insurance business in California. The plaintiff's unsuccessful action was for "a writ of mandate" to compel the Insurance Commissioner to restore its right to do business without subscribing to said California act.

Clearly, the fact that defendant is required to issue assigned risk policies as a condition of transacting liability insurance business in North Carolina does not constitute a denial of due process in violation of State and Federal constitutional provisions.

The gist of defendant's contentions is stated in an assignment of error as follows: "A statutory scheme which compels the issue of a policy under the Assigned Risk Plan without providing reasonable means for notice to the insurer and opportunity to defend a suit

against the Assigned Risk insured concurrently permits arbitrary, unreasonable, and unnecessary windfall to the personal injury claimant and an unreasonable, arbitrary, capricious, forfeiture and loss to the insurer. Permitting an accident victim to recover 'damages' through default proceedings in excess of legitimate compensation for injury actually incurred bears no real and substantial relationship to a valid statutory policy intended to assure the accident victim of just compensation for his injuries."

Defendant assigns as error the court's failure to make requested findings of fact. The requested findings involve primarily evidential facts tending to support the court's Finding of Fact No. 17, namely, "that the assigned risk portion of defendant's business in North Carolina, when considered separate and apart from all other automobile liability insurance business it does in North Carolina, has not been profitable and defendant has lost money thereon which makes this type of business undesirable."

As stated by Mr. Justice Douglas in *California Auto. Asso. v. Maloney, supra:* "(T)he state requires in the public interest each member of a business to assume a pro rata share of a burden which modern conditions have made incident to the business." Defendant's status is the same as that of all companies licensed to write motor vehicle liability insurance in this State. It assumes its pro rata part and no more of whatever additional burden is placed on it by the Assigned Risk Plan. If liability insurance carriers are required to conduct their business and issue policies at rates that are confiscatory and are thereby deprived of substantive due process, the remedy is by a general direct attack upon such rates on these grounds, not by way of defense in an action involving one policy issued in ordinary course in compliance with the regulations of the Assigned Risk Plan.

G.S. 20-279.34 provides that the Commissioner of Insurance "is authorized but not required to establish rates for assigned risk liability policies which are higher than approved manual rates." Defendant asserts that "(i)n those states other than North Carolina in which the defendant operates under an Assigned Risk Plan, there is some differential or surcharge to the insured affording to the company a greater premium for this class of business." Pertinent to this contention, the court's Finding of Fact No. 5 is as follows: "For persons who purchase their automobile liability insurance through the Assigned Risk Plan, the rates are exactly the same for the same coverage limits and for the same individuals *under the same circumstances* whether the insurance is written through the Plan or voluntarily in the regular market." (Our italics.) The meaning is clarified by the following testimony of defendant's witness, the as-

sistant manager of the North Carolina Automobile Assigned Risk Plan: "It is the Commissioner of Insurance who makes the determination that applicants for assigned risk insurance would pay the same rates as those people with the same driving record who buy automobile insurance on the open market." There is no evidence as to policies, if any, issued voluntarily to persons whose driving record ordinarily would necessitate that they obtain liability insurance under the Assigned Risk Plan. If the rates established for assigned risk liability policies under the Assigned Risk Plan are confiscatory and therefore deny substantive due process, the remedy is by general direct attack upon such rates on these grounds, not by way of defense in an action involving one policy issued in regular course in compliance with the regulations of the Assigned Risk Plan.

It may be advisable to provide by statute or by policy provision that a liability insurer be given an opportunity, notwithstanding policy violations by its insured, to contest, in an action against it, alone or jointly with its insured, issues as to its insured's liability and the extent of damage to the injured party. Presumably, defendant prefers that no action be instituted against it except on a judgment, obtained in a prior action to which it was not a party, which finally adjudicates and determines the liability of its insured.

Defendant refers to a possible windfall to plaintiff. These facts are noted: Plaintiff's counsel did not act in haste to obtain judgment by default and inquiry or final judgment. Moreover, the record furnishes no basis for a finding that Brown was not legally liable to plaintiff or that the jury awarded excessive damages. Nor is there any suggestion of collusion between plaintiff and Brown.

It is noted again that this action relates solely to *compulsory coverage* provided by a "motor vehicle liability policy" issued as "proof of financial responsibility." It is noted also that the policy issued by defendant to Brown contained the provision authorized by G.S. 20-279.21(h), to wit: "Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this article."

For the reasons stated, we are of opinion, and so decide, that the judgment of the court below should be and is affirmed.

Affirmed.

PARKER, C.J., concurs in the result.

PLESS, J., dissents.