LEVATA ODUM, Administratrix of the Estate of ARNETTA McPHAUL, Deceased, and BETTY O. MANGUM, and JERRY CLIFFORD OXENDINE, Co-executors of the Estate of CLIFTON OXENDINE, Plaintiffs v. NATIONWIDE MUTUAL INSURANCE COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendants

No. 9016SC290

(Filed 19 February 1991)

1. **Insurance § 108 (NCI3d)— automobile liability insurance— fraud in application—no defense to liability after accident occurs**

Fraud in an application for motor vehicle liability insurance is not a defense to the insurer's liability once injury has occurred, but this holding applies only to the statutory minimum amount. As to any coverage in excess of the statutory minimum, the insurer is not precluded by statute or public policy from asserting the defense of fraud, and such a defense, if successful, would insulate the insurer against liability as to both the insured and the injured third party. N.C.G.S. § 20-279.21(f)(1) and (g).

**Am Jur 2d, Automobile Insurance §§ 28, 52.**

**Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance. 83 ALR2d 1104.**

ODUM v. NATIONWIDE MUTUAL INS. CO.

[101 N.C. App. 627 (1991)]

2. **Insurance § 108 (NCI3d) — insurer's tender of funds — no waiver of defenses as to liability**

Defendant insurer's tender of funds did not constitute a waiver or estoppel of its defense as to liability under the policy in question, since estoppel to assert noncoverage occurs when the insurer's action results in some detriment to the insured or to someone else having rights under the policy, and neither plaintiff in this case showed detriment resulting from defendant's tender of payment.

**Am Jur 2d, Automobile Insurance §§ 381, 382.**

APPEAL by defendant Nationwide Mutual Insurance Company from judgment entered 8 December 1989 by *Judge Robert L. Farmer* in ROBESON County Superior Court. Heard in the Court of Appeals 27 September 1990.

*Musselwhite, Musselwhite & McIntyre, by James W. Musselwhite and David F. Branch, Jr., for plaintiff-appellee Levata Odum.*

*H. Mitchell Baker, III and William S. Britt for plaintiff-appellee Estate of Clifton Oxendine.*

*LeBoeuf, Lamb, Leiby & MacRae, by Kurt E. Lindquist II, for defendant-appellant.*

JOHNSON, Judge.

This action arises out of an auto accident which occurred on 16 June 1987 when a car driven by Robert McPhaul, husband of the insured, Arnetta McPhaul, crossed the center line and collided with a car driven by Clifton Oxendine. Mrs. McPhaul was a passenger in the car driven by Robert. Both Arnetta McPhaul and Clifton Oxendine died of injuries sustained in the wreck. Following Nationwide's denial of coverage, plaintiffs brought suit to collect under a motor vehicle liability insurance policy issued to Arnetta McPhaul.

State Farm Mutual Automobile Insurance Company insured Clifton Oxendine under a policy which provided, *inter alia*, uninsured motorist coverage. By order dated 1 June 1989, defendant State Farm was joined in the action as a necessary party. State Farm timely answered and moved for summary judgment. By order dated 18 September 1989, the motion was granted and the action

ODUM v. NATIONWIDE MUTUAL INS. CO.

[101 N.C. App. 627 (1991)]

was dismissed as to State Farm. State Farm is not a party to this appeal.

Nationwide answered plaintiffs' complaint and counterclaimed, alleging that Arnetta McPhaul made fraudulent and intentional misrepresentations on her insurance application which rendered the policy void *ab initio*. Nationwide moved for summary judgment on the ground that there was no genuine issue of material fact and the insurance policy was void *ab initio* as a matter of law. By judgment dated 8 December 1989, Judge Farmer denied Nationwide's motion for summary judgment and decreed that the insurance policy was in full effect and that defendant Nationwide was bound by the terms and conditions of the policy. Nationwide appeals.

The parties stipulate to the following facts:

Nationwide issued a motor vehicle liability insurance policy to Arnetta McPhaul for a 1979 Datsun owned by her. The stated policy limits for bodily injury liability were $50,000 each person and $100,000 each accident. As of the day of the accident, 16 June 1987, the premium charged on that policy was paid current. On that day, at about 6:30 a.m., Arnetta McPhaul was riding as a passenger in the Datsun which was driven by her husband, Robert. The Datsun collided with a vehicle operated by Clifton Oxendine. Both Arnetta McPhaul and Clifton Oxendine died as a result of their injuries.

In her application for insurance, Mrs. McPhaul represented that she was divorced, that she was the sole driver in her household and that no driver in her household had any convictions or motor vehicle offenses in the last five years. Her signature was witnessed by the Nationwide agent taking the application, who informed her that by law she was required to list her husband on the application if she was married and that her signature on the application was an attestation that the information on the application was true.

It is further stipulated that Vonzell McPhaul, Robert's brother, knew that as of 5 August 1986, Robert and Arnetta had been married for about nine years and that on 16 June 1987, the day of the accident, they were living together as man and wife; that the vehicle registered in Arnetta's name was a family vehicle which was often driven by Robert and that on the morning of the accident Robert was driving himself and Arnetta to work, as he regularly

did. It is further stipulated that on 25 March 1985 Robert McPhaul was convicted of driving while impaired.

The parties stipulate that it is Nationwide's customary practice when writing automobile insurance policies to order driving records for all drivers listed on a new application and if the record should reveal a conviction for driving while impaired within five years of the date of the application, Nationwide automatically and without exception cedes the insurance risk to the reinsurance facility. Had Mrs. McPhaul listed Robert as her husband, Nationwide would have discovered his conviction and automatically ceded the insurance.

Finally, the parties stipulate that Nationwide was notified of the accident and subsequently conducted an investigation during which it became aware that the vehicle was operated by Robert McPhaul, husband of Arnetta McPhaul, and that having such knowledge, Nationwide tendered payment of $939.00 pursuant to the collision coverage provided to Arnetta McPhaul.

In support of its motion for summary judgment, Nationwide submitted the sworn affidavit of Vonzell McPhaul, Robert's brother, who stated that at the time of the accident Robert and Arnetta had been married for about nine years, that they had been separated on several occasions, that on the day of the accident and for some time prior to that they were living together as man and wife and that Robert often drove his wife and then himself to work in the family car which was registered in Arnetta's name. Nationwide also submitted automobile insurance application form #61H-992123, signed by Arnetta McPhaul, with an effective date of 8 August 1986. The appropriate blocks on the application form were marked to indicate that (1) Arnetta was divorced, (2) no driver in the household had had any accidents during the last 5 years, (3) neither Arnetta nor any driver in the household had any violations in the last 5 years for which there has been a conviction or forfeiture of bail for any motor vehicle offense, (4) that no driver had been convicted of a criminal offense.

Defendant Nationwide contends that the trial court erred in ruling that, despite Mrs. McPhaul's deliberate and material misrepresentations, the policy was not void *ab initio* but was in full effect. Nationwide argues in the alternative that the misrepresentations render the policy void as to Mrs. McPhaul even though it is valid as to the injured third party. Finally, Nationwide argues

ODUM v. NATIONWIDE MUTUAL INS. CO.

[101 N.C. App. 627 (1991)]

that its tender of funds to Mrs. McPhaul's estate in no way constitutes a waiver or estoppel of its defenses as to the liability claims.

[1] The issue on appeal is whether the insurer on an automobile liability policy can avoid liability after an injury has occurred on the ground that the policy was procured by the insured's deliberate and material misrepresentations on the application.

Neither party made a distinction in its arguments between the minimum mandatory coverage required by G.S. § 20-279.21(b)(2) (bodily injury: $25,000 per person, $50,000 per accident) and the larger amount of coverage under the liability policy at issue in this case ($50,000 per person, $100,000 per accident). Such a distinction is important to a proper resolution of this appeal.

First, Nationwide argues that G.S. § 58-3-10 applies to the automobile liability policy at issue and thus a material misrepresentation on an application form constitutes a defense to recovery under the policy. As to the statutory amount of coverage required by G.S. § 20-279.21, we disagree.

General Statutes § 58-3-10, adopted in 1901, falls within Chapter 58, Insurance, article 3, General Regulations for Insurance. As an earlier and more general statement of insurance law, it is superseded with respect to automobile liability insurance by Chapter 20, Motor Vehicles, specifically by article 9A, The Motor Vehicle Safety and Financial Responsibility Act of 1953, and article 13, The Vehicle Financial Responsibility Act of 1957. Chapter 20 represents a complete and comprehensive legislative scheme for the regulation of motor vehicles and, as such, its insurance provisions regarding automobiles prevail over the more general insurance regulations of Chapter 58. The 1953 Act, found at G.S. §§ 20-279.1 to 20-279.39, applies to drivers whose licenses have been suspended and relates to the restoration of driver's licenses while the 1957 Act, found at G.S. §§ 20-309 to 20-319, applies to all motor vehicle owners and relates to vehicle registration. The two Acts are complementary and are to be construed in *pari materia* so as to harmonize them and give effect to both. See *Faizan v. Grain Dealers Mut. Ins. Co.*, 254 N.C. 47, 118 S.E.2d 303 (1961).

Chapter 20 requires, *inter alia*, the following with regard to liability insurance. No self-propelled motor vehicle shall be registered in this state unless the owner has financial responsibility as provided in article 13. G.S. § 20-309(a). Financial responsibility shall

be a liability insurance policy or other approved form as defined in Chapter 20, article 9A. G.S. § 20-309(b). An owner's policy of liability insurance shall insure against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle because of bodily injury, in the amounts of $25,000 per person, and $50,000 per accident, because of injury to or death of two or more persons in any one accident. G.S. § 20-279.21(b)(2). General Statutes § 20-279.21(f) expressly provides:

> Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein: (1) Except as hereinafter provided, the liability of the insurance carrier *with respect to the insurance required by this Article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs*; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; *no statement made by the insured* or on his behalf and no violation of said policy *shall defeat or void said policy* (emphasis added).

Although we can find no North Carolina case which deals specifically with the effect of G.S. § 20-279.21(f)(1) in a situation involving a misrepresentation made in the application for insurance (*but see Ferguson v. Employers Mut. Cas. Co.*, 254 S.C. 235, 174 S.E.2d 768 (1970) (interpreting N.C.G.S. § 20-279.21(f)(1) ) ), there are several North Carolina cases which have interpreted the impact of G.S. § 20-279.21(f)(1) on the liability of insurance carriers when an insured violates a provision of the policy. The seminal case is *Swain v. Ins. Co.*, 253 N.C. 120, 116 S.E.2d 482 (1960), where the insurance contract provided that the insured, in the event of suit against him, must forward immediately to the insurer "every demand, notice, summons or other process received by him" and must cooperate with the insurer in defending the suit. *Swain*, 253 N.C. at 127, 116 S.E.2d at 487. The insured violated this provision and the insurance company pleaded this violation as a defense to recovery under the policy by an injured third party who had obtained a default judgment against the insured. The Court found:

> The manifest purpose of the 1957 Act [is] to provide protection, within the required limits, to persons injured or damaged by the negligent operation of a motor vehicle; and, in respect of a "motor vehicle liability policy," to provide such protection

ODUM v. NATIONWIDE MUTUAL INS. CO.

[101 N.C. App. 627 (1991)]

notwithstanding violations of policy provisions by the owner subsequent to accidents on which such injured parties base their claim.

*Swain*, 253 N.C. at 126, 116 S.E.2d at 487. The Court further found that "to bar recovery from an insurer on account of such a policy violation would 'practically nullify the statute by making the enforcement of the rights of the person intended to be protected dependent upon the acts of the very person who caused the injury.' " *Id., quoting, Ott v. American Fidelity & Cas. Co.*, 161 S.C. 314, 159 S.E. 635 (1931). *Accord, Jones v. Ins. Co.*, 270 N.C. 454, 155 S.E.2d 118 (1967) (failure of insured to give notice of suit to insurer as required by policy is no defense against default judgment in favor of injured third party); *see also Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964) (primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims, therefore no reason why injured third party's rights to recover from insurance carrier should depend upon whether the conduct of its insured was intentional or negligent). The *Swain* and *Jones* decisions specifically concerned violations of insurance policy provisions with regard to notice, the violation of which occurred after the injury had occurred and after the liability of the insurer had become absolute. These decisions were based upon the legislative purpose for mandatory vehicle liability insurance (to protect innocent victims) and the words of the statute ("the liability of the [ ] carrier . . . shall become absolute whenever injury . . . occurs . . . and no violation of said policy shall defeat or void said policy," G.S. § 20-279.21(f)(1) ). We find that this analysis demands a similar result when the defense asserted is fraud in the application for insurance. Subsection (f)(1) of G.S. § 20-279.21, quoted above in part, provides that the insurer's liability becomes absolute whenever injury occurs, and "no statement made by the insured . . . shall defeat or void said policy." Every policy is subject to this provision whether it is expressly stated in the contract or not. G.S. § 20-279.21(f) ("Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein[.]"). This result is strengthened by the recognition that the legislature included at subsection (h) a provision by which insurers could recoup losses for which they became obligated solely by operation of the statute. Subsection (h) of G.S. § 20-279.21 states:

Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the

insurance carrier would not have been obligated to make under the terms of the policy except for the provision of this Article.

See *Insurance Co. v. Webb*, 10 N.C. App. 672, 179 S.E.2d 803 (1971). We note that the insurance policy at issue in this case was not included in the record and defendant Nationwide has not pleaded this clause in any counterclaim for recoupment.

We find, however, that the holding above, that fraud in an application for motor vehicle liability insurance is not a defense to the insurer's liability once injury has occurred, applies only to the statutory minimum amount. In the case *sub judice*, the stated policy limit was greater than the statutory minimum and as to that amount, the above analysis does not apply.

The distinction between the mandatory amount of coverage required by statute (*see* G.S. § 20-279.21(b)(2)) and any amount in excess of that is found in G.S. § 20-279.21(g):

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provision of this Article. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

The effect of this distinction was recognized in *Swain*, 253 N.C. at 127, 116 S.E.2d at 487-88. As explained in *Swain*, the 1957 Act changed the law with respect to the compulsory amount such that a violation of a policy provision was not a defense to liability of the insurer, but as to any amount in excess of that, a policy provision requiring notice to the insurer would be enforced as written and a violation was a valid and complete defense. The *Swain* Court pointed to *Muncie v. Ins. Co*, 253 N.C. 74, 116 S.E.2d 474 (1960), as being a statement of the applicable law as to coverage "in excess of or in addition to the coverage specified for a motor vehicle liability policy." *Muncie* involved an accident which occurred prior to the effective date of the 1957 Act. An injured third party sued the insurer to collect on a judgment against the insured. The insurer pled as a defense the violation of a policy provision

ODUM v. NATIONWIDE MUTUAL INS. CO.

[101 N.C. App. 627 (1991)]

requiring the insured to give the insurer timely notice of the accident. The Court held that the constitutional guaranty of freedom of contract required that the policy provision be enforced as written. Thus, the violation of the notice provision in the policy by the insured was a complete defense both as to the insured and the injured third party. *Accord, Clemmons v. Ins. Co.*, 267 N.C. 495, 148 S.E.2d 640 (1966); *Woodruff v. Ins. Co.*, 260 N.C. 723, 133 S.E.2d 704 (1963) (assigned risk policy); *Insurance Co. v. Cas. Co.*, 283 N.C. 87, 194 S.E.2d 834 (1973) (coverage which is in addition to the mandatory statutory requirements is voluntary and as to that amount G.S. § 20-279.21 does not apply); *Insurance Co. v. Hale*, 270 N.C. 195, 154 S.E.2d 79 (1967); *Jones v. Ins. Co.*, 270 N.C. 454, 155 S.E.2d 118 (1967); *Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964).

We therefore hold that as to any coverage in *excess* of the statutory minimum, the insurer is not precluded by statute or public policy from asserting the defense of fraud. Such a defense, if successful, would insulate the insurer against liability as to both the insured, Arnetta McPhaul, and the injured third party, Mr. Oxendine. *Muncie*, 253 N.C. 74, 116 S.E.2d 474.

[2] Defendant lastly contends that its tender of funds did not constitute a waiver or estoppel of its defenses as to liability under the policy at issue. We agree.

"Estoppel to assert noncoverage occurs when the insurer's action results in some detriment to the insured or to someone else having rights under the policy." *Insurance Co. v. Surety Co.*, 1 N.C. App. 9, 11, 159 S.E.2d 268, 272 (1968). Neither plaintiff in the case *sub judice* has shown detriment to them resulting from Nationwide's payment.

In summary, we find that as to the *mandatory amount* of motor vehicle liability insurance coverage required by G.S. § 20-279.21, fraud in an application for insurance is not a defense to the insurer's liability once injury has occurred, but as to any amount of coverage in *excess* of the statutory minimum, fraud is a defense under common law or contract law principles.

Therefore, we modify the decision of the court below in that we affirm summary judgment for plaintiffs, finding the insurance policy valid, but only to the extent of the mandatory amount of

coverage. As to the amount in excess, we find that there exist genuine issues of material fact.

We modify and affirm in part the judgment below, and remand for further proceedings not inconsistent with this opinion.

Modified and affirmed in part and remanded.

Judges EAGLES and PARKER concur.