BESSIE J. SWAIN v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 12 October, 1960.)

**1. Insurance § 3—**

> Statutory provisions in effect at the time of the execution of a contract of insurance become a part of the contract to the same extent as though actually written into it.

**2. Insurance §§ 60, 65— Under 1957 Vehicle Financial Responsibility Act violation of policy provisions by insured after liability has become absolute cannot defeat rights of injured party.**

> The Vehicle Financial Responsibility Act of 1957, G.S. 20-309, *et seq.*, specifies that proof of financial responsibility shall be evidenced by a certificate of insurance, or otherwise, as defined in Article 9A, G.S. Chapter 20, and therefore as to an accident occurring subsequent to the effective date of the 1957 Act the provisions of G.S. 20-279.21(f) are applicable, so that to the extent of coverage required by the Act the failure of the insured to comply with the provisions of the policy requiring him to give notice of any claim or suit brought against him cannot defeat recovery by the injured party against insurer within the amount of the statutory coverage, even though the policy is not an assigned risk claim.

**3. Same—**

> Under G.S. 20-279.21(f)(1), if insured becomes legally obligated for the payment of damages on account of a collision occurring after the effective date of G.S. 20-309, insurer's liability becomes absolute as of the date of the collision if the policy is then valid and in force, and subsequent violations of policy provisions by the insured cannot affect the liability of insurer to a person injured in such collision as the result of insured's negligence, although insured may be liable to insurer for damages resulting to insurer as the result of breach of the policy provisions. G.S. 20-279.21(h).

**4. Constitutional Law § 23—**

An insurer who voluntarily issues its automobile liability policy with full knowledge of statutory provisions that failure of insured to give notice of a claim or an action against insured should not defeat the injured person's rights as against insurer, may not challenge the constitutionality of the statutory provisions on the ground that the liability of insured to the injured person, for which insurer is liable under the policy, was established in an action of which it had no notice and in which it was given no opportunity to be heard. Constitution of North Carolina, Art. I, sec. 17; Fifth Amendment to the Federal Constitution.

APPEAL by defendant from *Fountain, Special Judge,* June Special Term, 1960, of POLK.

This appeal is from a judgment which, after recitals, including a recital that the parties had waived jury trial, provides:

"And the Court, having considered the evidence and stipulations of counsel and the contentions of the parties relative thereto, from said evidence and stipulations, finds the following facts:

"1. That the plaintiff is an individual and the defendant is a corporation duly organized and existing under and by virtue of the law, and both parties are properly before the Court, and the Court has jurisdiction of this matter.

"2. That on the 30th day of September 1958, there was in full force and effect a policy of liability insurance issued by the defendant to one, Joseph Avery Owens, said policy bearing No. 61-151-437, and insuring the said Joseph Avery Owens for property damage and personal injury liability arising out of the operation of a 1951 Studebaker automobile, the limits of said policy being in excess of the amount in controversy in this action.

"3. That said policy of insurance was a standard automobile liability insurance policy and contained, among others, the following terms and conditions:

" ' LIABILITY — To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

" ' Coverage D: injury to or destruction of property, including loss of use thereof, hereinafter called "property damage," arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile;

" ' Coverage E: bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person, arising out of the ownership, mainte-

nance or use of the owned automobile or any non-owned automobile';

"and

" ' CONDITIONS — 3 NOTICE — In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. In the event of theft the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

" ' . . .

" ' 5 ASSISTANCE AND COOPERATION OF THE INSURED (Parts 1 and 11)

'The insured shall cooperate with the Company and, upon the Company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.'

"4. That the defendant had furnished the said Joseph Avery Owens with a certificate of insurance necessary for the registration of the aforementioned Studebaker automobile, as provided in Section 20-309 of the General Statutes of North Carolina, and that same had been filed under and pursuant to Article 13 of the Motor Vehicle Act, commonly referred to as the Vehicle Financial Responsibility Act of 1957, but said policy was not issued by the defendant as an assigned risk, or as a result of Article 9-A of the Motor Vehicle Act, commonly referred to as the Motor Vehicle Safety and Financial Responsibility Act of 1953, and that said contract of insurance was a voluntary insurance contract between the defendant and the said Joseph Avery Owens for which only the standard premium with no surcharge was paid.

"5. That on the said 30th day of September 1958, the aforesaid Studebaker automobile described in the aforesaid insurance policy, while being driven by the said Joseph Avery Owens, was

involved in an automobile collision with a 1950 Chevrolet automobile operated by the plaintiff herein, Bessie J. Swain.

"6. That thereafter the said Joseph Avery Owens reported the occurrence of said collision to the defendant, and, after investigation, the defendant through its adjustor or Field Claimsman denied liability to the said Bessie J. Swain upon the contention that Joseph Avery Owens was not negligent or liable and that in any event the said Bessie J. Swain was contributorily negligent, and upon advising counsel for the plaintiff of said denial of liability, said adjustor or Field Claimsman was advised by the plaintiff's attorneys of their intention to susequently institute suit against Joseph Avery Owens.

"7. That thereafter, on March 12, 1959, the plaintiff herein instituted a civil action in the Superior Court of Polk County by filing a Complaint and issuing a Summons against the said Joseph Avery Owens wherein the plaintiff sought damages for personal injuries and damage to her automobile in the total sum of $9,487, and that on the 13th day of March 1959, said Summons and a copy of the Complaint were served upon the said Joseph Avery Owens by the Sheriff of Polk County.

"8. That at no time thereafter did the said Joseph Avery Owens deliver said papers to the defendant or in any way give the defendant notice of the existence of said civil action, or the service of said papers upon him, and on the 20th day of April 1959, a Judgment by Default and Inquiry was entered against the said Joseph Avery Owens by reason of the failure of the said Joseph Avery Owens to file an answer, or give notice of said action to the defendant herein; that on September 3, 1959, at the Regular September 1959 Term, of the Superior Court of Polk County, inquiry was submitted to the jury, and a jury verdict rendered awarding the plaintiff the sum of $1,252.00 as damages for personal injuries and property damage against the said Joseph Avery Owens.

"9. That judgment was duly entered thereon, and, upon return of execution under said judgment by the Sheriff of Polk County 'unsatisfied,' this action was instituted on the 9th day of December 1959.

"10. That the Summons in this action was served upon the defendant in due course, and said Summons and copy of the Complaint were the first notice to the defendant of the institution or existence of the aforesaid civil action against Joseph Avery Owens, the said Joseph Avery Owens having failed and

neglected to advise the defendant herein at any time of said action, Judgment by Default and Inquiry or jury verdict and final judgment.

"11. That the plaintiff has demanded payment of the aforesaid judgment against the said Joseph Avery Owens, and the defendant has failed and refused to pay same.

"And the Court being of the opinion, upon the foregoing facts, that the plaintiff is entitled to judgment against the defendant in this action:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover of the defendant the sum of $1,252.00, together with interest from the 3rd day of September 1959, the date of the judgment rendered against Joseph Avery Owens, and the costs of this action to be taxed by the Clerk."

Defendant excepted "to the foregoing judgment and the signing thereof" and appealed; and defendant, on appeal, assigns as error "the foregoing judgment and the signing thereof."

*McCown, Lavender & McFarland for plaintiff, appellee.*
*Williams, Williams & Morris for defendant, appellant.*

Bobbitt, J. "Proof of financial responsibility" is defined in the "Motor Vehicle Safety-Responsibility Act of 1953" (S.L. 1953, c. 1300, sec. 1(10), as amended by S.L. 1955, c. 1355, sec. 1; G.S. 20-279.1, 1959 Cumulative Supplement), as follows: "Proof of ability to respond in damages for liability, on account of accident occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of $5,000 because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of $10,000 because of bodily injury to or death of two or more persons in any one accident, and in the amount of $5,000 because of injury to or destruction of property of others in any one accident."

The 1953 Act repealed the "Motor Vehicle Safety and Responsibility Act" of 1947 (S.L. 1947, c. 1006; G.S. 20-224 through G.S. 20-279) "except with respect to any accident or violation of the motor vehicle laws of this State occurring prior to January 1, 1954, or with respect to any judgment arising from such accident or violation, and as to such accidents, violations or judgments Chapter 1006 of the Session Laws of 1947 shall remain in full force and effect."

S.L. 1953, c. 1300, secs. 35, 37 and 42; G.S. 20-279.35 and G.S. 20-279.36, 1959 Cumulative Supplement.

The provisions of the 1953 Act are codified in the 1959 Cumulative Supplement, under the heading "Article 9A," as G.S. 20-279.1 through G.S. 20-279.39.

Under the 1953 Act, as under the 1947 Act, a person whose driver's license had been suspended or revoked as provided therein was required to furnish proof of financial responsibility as a prerequisite to the reinstatement thereof. The great majority of licensed drivers, whose prior conduct had not resulted in the suspension or revocation of their licenses, were not required to furnish proof of financial responsibility. As to these licensed drivers, and persons legally responsible for their conduct, there was no assurance that they could, to any extent, discharge the liability imposed upon them by law for damages arising from the negligent operation of a motor vehicle. To provide greater protection for injured parties, the General Assembly enacted the Vehicle Financial Responsibility Act of 1957. S.L. 1957, c. 1393. Specific provisions (of the 1953 and 1957 Acts) will be referred to hereafter by their respective designations as codified in the 1959 Cumulative Supplement.

The 1957 Act, in pertinent part, provides:

"No self-propelled motor vehicle shall be registered in this State unless the owner at the time of registration shows proof of financial responsibilty. Proof of financial responsibility shall be evidenced by a certificate of insurance or certificates of financial security bond or a financial security deposit or by qualification as a self-insurer, as these terms are defined and described in article 9A, chapter 20 of the General Statutes of North Carolina." G.S. 20-309.

"The provisions of Article 9A, chapter 20 of the General Statutes which pertain to the method of giving and maintaining proof of financial responsibility and which govern and define 'motor vehicle liability policy' and assigned risk plans shall apply to filing and maintaining proof of financial responsibility required by this article." G.S. 20-314.

G.S. Article 9A, Chapter 20, contains G.S. 20-279.21(f) which provides:

"(f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance carrier with respect to the insurance required by this article shall become absolute whenever injury or damage covered by said motor vehicle liability

policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;

"2. The satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of such injury or damage;

"3. The insurance carrier shall have the right to settle any claim covered by the policy, and if such settlement is made in good faith, the amount thereof shall be deductible from the limits of liability specified in subdivision 2 of subsection (b) of this section;

"4. The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the article shall constitute the entire contract between the parties."

The 1957 Act required *every owner* of a motor vehicle, as a prerequisite to the registration thereof, to show "proof of financial responsibility" in the manner prescribed by G.S. Article 9A, Chapter 20, to wit, the 1953 Act. The manifest purpose of the 1957 Act was to provide protection, within the required limits, to persons injured or damaged by the negligent operation of a motor vehicle; and, in respect of a "motor vehicle liability policy," to provide such protection notwithstanding violations of policy provisions by the owner subsequent to accidents on which such injured parties base their claims. As stated by *Stabler, J.,* in *Ott v. American Fidelity & Casualty Co.* (S.C.), 159 S.E. 635, 76 A.L.R. 4, to bar recovery from the insurer on account of such policy violations would "practically nullify the statute by making the enforcement of the rights of the person intended to be protected dependent upon the acts of the very person who caused the injury." In accord: *Gillard v. Manufacturers' Ins. Co.* (N.J.), 107 A. 446; *Arizona Mut. Auto Ins. Co. v. Bernal* (Ariz.), 203 P. 338.

Owens obtained registration of his 1951 Studebaker by filing with the Commissioner of Motor Vehicles, as proof of financial responsibility, defendant's certificate of insurance. By the issuance of said certificate for such purpose, defendant represented that it had issued, and there was in effect, an owner's "motor vehicle liability policy" as defined in G.S. 20-279.21 covering Owens' Studebaker.

"Where a statute is applicable to a policy of insurance, the pro-visions of the statute enter into and form a part of the policy to the same extent as if they were actually written in it." *Howell v. Indemnity Co.*, 237 N.C. 227, 229, 74 S.E. 2d 610, and cases cited.

The policy provisions required defendant "(t)o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" because of "property damage" and "bodily injury" as defined therein. Hence, under G.S. 20-279.21(f)(1), if Owens is "legally obligated" for the payment of such damages on account of the collision of September 30, 1958, defendant's liability became absolute when such collision occurred.

Plaintiff's action is to recover the amount of her judgment against Owens. This judgment, unless and until set aside, establishes conclusively the legal liability of Owens to plaintiff on account of the collision of September 30, 1958. In this connection, attention is called to *Sanders v. Chavis*, 243 N.C. 380, 90 S.E. 2d 749. The policy involved in *Sanders* was an assigned risk policy furnished as proof of financial responsibility in accordance with the 1947 Act. The 1947 Act provided, in respect of such policy, that "no violation of the terms of the policy shall operate to defeat or avoid the policy so as to bar recovery within the limits provided in this article." G.S. 20-227(5)(f). The fact that the liability insurance carrier had received no notice prior to judgment of the institution and pendency of the action against its insured was held irrelevant in determining whether the judgment should be set aside on the ground of surprise or excusable neglect under G.S. 1-220.

Defendant pleads, in bar of plaintiff's right to recover, violations by Owens subsequent to September 30, 1958, of certain policy provisions, to wit, those requiring Owens, in the event of suit against him, to forward immediately to defendant "every demand, notice, summons or other process received by him or his representative," and to cooperate with defendant in defending such suit. No issues relevant to the legal liability of Owens to plaintiff are raised.

As to accidents occurring prior to the effective date (January 1, 1958) of the 1957 Act, such policy violations constitute a valid and complete defense. *Muncie v. Ins. Co., ante* 74, and cases cited. Moreover, the law as stated in *Muncie* is presently applicable as to coverage "in excess of or in addition to the coverage specified for a motor vehicle liability policy" as defined in G.S. 20-279.21. See G.S. 20-279.21(g). However, as to the compulsory coverage provided by a "motor vehicle liability policy," as defined in G.S. 20-279.21, issued as "proof of financial responsibility" as defined in G.S. 20-279.1,

G.S. 20-279.21(f)(1) provides explicitly that "no violation of said policy shall defeat or void said policy." Plaintiff's judgment against Owens is for an amount substantially less than the compulsory coverage.

If plaintiff suffers loss on account of the failure of Owens to comply with said policy provisions, such loss is attributable solely to derelictions of its insured. Under G.S. 20-279.21(f)(1), such policy violations do not defeat or avoid the policy in respect of plaintiff's right to recover from defendant the amount of the judgment establishing Owens' legal liability to her. Different questions are presented as to the rights and liabilities of defendant and Owens *inter se*. Indeed, G.S. 20-279.21(h) provides: "(h) Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this article." It would seem that the General Assembly had in mind a factual situation such as that here considered.

Defendant contends that G.S. 20-279.21(f)(1) when so construed deprives it of due process of law in violation of Article I, Section 17, Constitution of North Carolina, and of the Fifth Amendment to the Constitution of the United States. It insists it has had no notice or opportunity to be heard in respect of the issues determinative of the legal liability, if any, of Owens to plaintiff.

There is no contention that plaintiff had (or has) any legal right under policy or statutory provisions to sue defendant unless and until she first obtained a final judgment against Owens. Defendant's right to notice of plaintiff's action and to an opportunity to defend such action in Owens' name is based on contractual obligations of Owens. Plaintiff has done nothing to deprive defendant of such notice and opportunity to defend. There is no contention that defendant was deprived of such notice and opportunity to defend in an action instituted by plaintiff, or which plaintiff was legally entitled to institute, against defendant.

The policy here involved was voluntarily issued by defendant to Owens. It is not an assigned risk policy. See G.S. 20-279.34. Defendant's risk, under policy and statutory provisions, was voluntarily assumed.

The decision in *Merriman v. Maryland Casualty Co.* (Wash.), 266 P. 682, cited by defendant, was based solely on policy provisions. No provision, either policy or statutory, such as G.S. 20-279.21(f)(1), was involved, and no constitutional question was considered. The

cases referred to below, not cited in the briefs, deal with factual situations similar to that here involved.

In *Vance v. Burke* (Mass.), 166 N.E. 761, the policy contained this provision: "(c) No statement made by the Assured or on his behalf and no violation of the terms of this policy shall operate to defeat or avoid this policy so as to bar recovery within the limit provided in this policy by a judgment creditor proceeding under the provisions of Section 113 of Chapter 175 and clause 10 of Section 3 of Chapter 214 of the General Laws." The opinion of *Rugg, C. J.*, states: "We are of opinion that no constitutional question of this nature is open to the insurer on this record. It issued the policy. That is admitted. So far as appears on this record, that action was entirely voluntary on the part of the insurer. Its assumption of the liability here sought to be enforced was optional, not compulsory. The liability of the insurer in this particular has become contractual and is not statutory. Having entered into a contract freely, the insurer cannot be heard to complain of its terms. One cannot assume an obligation of his own free will and then successfully assail its constitutionality." It is noted that the Justices of the Supreme Judicial Court of Massachusetts, *In re Opinion of the Justices*, 147 N.E. 681, 699, had previously declared: "The provision that no statement made by or on behalf of the insured and no violation of the terms of the policy shall defeat the claim of a judgment creditor, injured by negligence in the operation of the insured motor vehicle, proceeding in accordance with the statute to collect damages permitted by the proposed bill, does not offend against any provision of the Constitution."

In *Warecki v. United States Fidelity and Guaranty Co.* (Mass.), 170 N.E. 49, the opinion of *Sanderson, J.*, states: "The policy required the assured to give notice to the insurer and to cooperate with it, but it also must have provided that a violation of its terms would not defeat the policy so as to bar recovery against it by a judgment creditor. (Citing statutory provisions) If it be assumed that the defendant did not receive the notice from the assured, for which the contract called, it would still be liable to the plaintiff because of the terms of its contract of insurance. *Vance v. Burke* (Mass.), 166 N.E. 761."

In *Kruger v. California Highway Indemnity Exchange* (Cal.), 258 P. 602, a similar question was raised with reference to the constitutionality of the "jitney bus ordinance" of the City and County of San Francisco. The defendant had issued its policy in compliance with the requirements of the ordinance. The opinion of *Curtis, J.*,

states: "The municipality undoubtedly has the right within reasonable limits to prescribe the nature of the security to be given by those operating vehicles for hire upon its public streets. There is nothing unreasonable in the provisions of the ordinance requiring the operator of such a vehicle to protect the public by the bond or policy of insurance required therein and in the manner as required. There was nothing obligatory upon the appellant requiring it to issue such a policy as it did. The policy was issued freely and voluntarily and without coercion on the part of any one. It can with perfect safety be assumed that appellant was familiar with the terms of said ordinance and expressly contracted in reference thereto and agreed to be bound by those provisions of the policy inserted therein in compliance with the requirements of the ordinance. It is not unreasonable to assume that the premium charged upon such a policy was fixed in reference to the extent of the liability incurred by appellant in issuing the same. To now hold that the ordinance is void and appellant released from its obligations under the policy of insurance would be to grant it immunity from its voluntary contracts entered into for an adequate and valuable consideration under the guise of protecting its constitutional rights. As already seen, the ordinance in no way invaded appellant's constitutional rights. On the other hand, the liability which respondent now seeks to enforce against appellant is one it voluntarily assumed."

When defendant voluntarily issued its policy to Owens, it did so with full knowledge that the provisions of G.S. 20-279.21 (f) (1) became a part thereof as fully as if written therein; and, having voluntarily assumed the risk, it may not challenge the constitutionality of the statutory provisions.

In the factual situation here presented, applicable statutory provisions require that the judgment be affirmed.

Affirmed.