LEO BEASLEY v. HARTFORD ACCIDENT AND INDEMNITY COMPANY

No. 7114DC62

(Filed 28 April 1971)

Insurance §§ 84, 103— assigned risk insurance — coverage on replacement vehicle — forwarding of summons and suit papers to insurer

A car owner who did not apply for assigned risk insurance was not an assigned risk insured with respect to a policy voluntarily issued by the insurer to afford coverage to the owner's car, a replacement vehicle; consequently, the plaintiff in an accident case involving the owner's car was not required to forward a copy of the summons and complaint to the insurer. G.S. 20-279.21(f)(1); G.S. 20-279.34.

APPEAL by plaintiff from Lee, District Court Judge, 26 August 1970 Session of District Court, DURHAM County.

At trial the parties stipulated that this action presented questions of law only and that the facts essential to decision were not

in dispute. Both parties had moved for summary judgment under Rule 56, Rules of Civil Procedure, and it was stipulated, in writing, that the court might render judgment based on agreed facts, essentially as follows:

Carolyn Rogers Brunson and Thomas Brunson, Jr., were married on 20 November 1965, and at that time Carolyn Brunson owned a 1964 Ford automobile. On 8 August 1966, she filed application for liability insurance under the North Carolina Assigned Risk Plan to provide coverage for the 1964 Ford and her risk was assigned to the Hartford Accident and Indemnity Company, hereafter referred to as Hartford, and an assigned risk number was given to her. At that time she and her husband were separated. Hartford issued its policy naming Carolyn Rogers Brunson as the insured and describing the 1964 Ford as the automobile covered by the policy. All policies written by Hartford under the North Carolina Assigned Risk Plan contain the letters "AZ" in the number of the policy. The policy issued by Hartford was numbered 22AZ116084. At the end of the first year, the policy was renewed by Hartford and the renewal policy was numbered 22AZ132986 covering the period from 2 September 1967 until 2 September 1968. On 5 February 1968, Hartford was advised by the Protective Agency, Inc., that it had purchased the business of the producer of record for both policies and in the future would be producer of record with respect to policy No. 22AZ132986. Prior to 31 May 1968, the Brunsons were reunited as husband and wife and became members of the same household. Also prior to that date the Ford automobile was sold and a 1964 Pontiac was bought and registered with the North Carolina Department of Motor Vehicles in the name of Thomas Brunson, Jr. The Brunsons notified Protective Agency, Inc., that the Ford had been sold and the Pontiac registered in the name of Thomas Brunson, Jr., had been acquired. Protective Agency, Inc., producer of record, notified Hartford to make certain changes in Policy No. 22AZ132986, to wit: delete the 1964 Ford as the described vehicle and substitute the 1964 Pontiac and add Thomas Brunson, Jr.'s, name as a named insured as he would drive the automobile about 50% of the time. At the end of the first renewal period, the policy as changed, was renewed to run from 2 September 1968 until 2 September 1969, and was numbered 22AZ153249.

On 20 April 1969, Thomas Brunson, Jr., while driving the 1964 Pontiac had an accident in which plaintiff Leo Beasley was allegedly injured. Prior to the date of the accident Thomas Brunson, Jr., had not applied to the North Carolina Assigned Risk Plan to have his risk assigned.

On 20 November 1969, Leo Beasley instituted a civil action against Thomas Brunson, Jr., alleging negligent operation of the Pontiac by Brunson and seeking recovery for injuries sustained. Summons and complaint were duly served on Brunson, but plaintiff's counsel did not forward to Hartford, or one of its agents, by registered mail, return receipt requested, a copy of summons and complaint in the action. Beasley obtained judgment by default and inquiry against Brunson and subsequently, after inquiry by the jury, a judgment was entered awarding plaintiff the sum of $1500 plus costs of court. The judgment has not been paid. In reply to an inquiry to the Commissioner of Motor Vehicles made by plaintiff's counsel on 30 April 1970, the Supervisor of the Safety Responsibility Division advised by letter dated 6 May 1970 that the records of his Department did not show whether Thomas Brunson, Jr., secured his liability insurance through the North Carolina Assigned Risk Plan. In response to an inquiry to the North Carolina Assigned Risk Plan by plaintiff's counsel on 25 May 1970, the Manager thereof notified plaintiff's counsel by letter dated 1 June 1970 that the North Carolina Assigned Risk Plan had no record of having assigned to Hartford an application for insurance submitted in the name of Thomas Brunson, Jr. The policy issued by Hartford naming Carolyn Rogers Brunson and Thomas Brunson, Jr., as insureds contain the standard provisions required by the State of North Carolina.

On these facts the court concluded that the policy issued by Hartford was written under the North Carolina Assigned Risk Plan and was an assigned risk policy within the meaning of G.S. 20-279.21 (f) (1) and G.S. 20-279.34, was in force on 20 April 1969, and that Thomas Brunson, Jr., was an assigned risk insured under the policy issued by Hartford (No. 22AZ153249). The court denied plaintiff's motion for summary judgment and allowed defendant's motion for summary judgment.

*C. Horton Poe, Jr., for plaintiff appellant.*

*Newsom, Graham, Strayhorn, Hedrick and Murray, by E. C. Bryson, Jr., for defendant appellee.*

MORRIS, Judge.

This case presents a novel question in this State, nor do we find that any other State having the assigned risk plan has had the question presented.

G.S. 20-279.34 provides that:

"Every person required to file proof of financial responsibility under the provisions of this article who has been unable to obtain a motor vehicle liability insurance policy through ordinary methods shall have the right to apply to the Commissioner of Insurance to have his risk assigned to an insurance carrier licensed to write, and writing motor vehicle liability insurance in this State, and the insurance carrier shall issue a motor vehicle liability policy which will meet at least the minimum requirements for establishing financial responsibility, as provided for in this article."

The statute further requires the insurance carriers, as a prerequisite to the further engaging in selling motor vehicle liability insurance in this State, when the risk has been assigned to it, "to issue a motor vehicle liability policy which will meet at least the minimum requirements for establishing financial responsibility, as provided for in this article." The statutory requirement of issuing assigned risk motor vehicle liability policies as a condition of continuing to transact liability insurance business in North Carolina has been held not to constitute a denial of due process in violation of State and Federal constitutional provisions. *Jones v. Insurance Co.*, 270 N.C. 454, 155 S.E. 2d 118 (1967).

Pertinent provisions of G.S. 20-279.21 defining "Motor vehicle liability policy" are as follows:

"(a)    A 'motor vehicle liability policy' as said term is used in this article shall mean an owner's or an operator's policy of liability insurance, certified as provided in § 20-279.19 or § 20-279.20 as proof of financial responsibility, and issued, except as otherwise provided in § 20-279.20, by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured.

(b)    Such owner's policy of liability insurance:

(1)   Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted;

(2)   Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, or any other persons in lawful possession, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to such motor vehicle, as follows: Ten thousand dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, twenty thousand dollars ($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one accident; . . .

. . .

(f)   Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(1)   Except as hereinafter provided, and with respect to policies of motor vehicle liability insurance written under the North Carolina assigned risk plan, the liability of the insurance carrier with respect to the insurance required by this article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy. As to policies issued to insureds in this State under the assigned risk plan, a default judgment taken against an assigned risk insured shall not be used as a basis for obtaining judgment against the insurer unless counsel for the plaintiff has forwarded to the insurer, or to one of its

agents, by registered mail with return receipt requested, a copy of summons, complaint, or other pleading, filed in the action. The return receipt shall, upon its return to plaintiff's counsel, be filed with the clerk of court wherein the action is pending against the insured and shall be admissible in evidence as proof of notice to the insurer. The refusal of insurer or its agent to accept delivery of the registered mail, as provided in this section, shall not affect the validity of such notice and any insurer or agent of an insurer refusing to accept such registered mail shall be charged with the knowledge of the contents of such notice. When notice has been sent to an agent of the insurer such notice shall be notice to the insurer. The word 'agent' as used in this subsection shall include, but shall not be limited to, any person designated by the insurer as its agent for the service of process, any person duly licensed by the insurer in the State as insurance agent, any general agent of the company in the State of North Carolina, and any employee of the company in a managerial or other responsible position, or the North Carolina Commissioner of Insurance; provided, where the return receipt is signed by an employee of the insurer or an employee of an agent for the insurer, shall be deemed for the purposes of this subsection to have been received. The term 'agent' as used in this subsection shall not include a producer of record or broker, who forwards an application for insurance to the assigned risk bureau. The Commissioner of Motor Vehicles and the North Carolina assigned risk bureau, shall, upon request made, furnish to the plaintiff or his counsel the identity and address of the insurance carrier as shown upon the records of the Department or the bureau, and whether the policy is an assigned risk policy. Neither the Department of Motor Vehicles nor the assigned risk bureau shall be subject to suit by reason of a mistake made as to the identity of the carrier and its address in response to a request made for such information."

Plaintiff admits that he did not forward to Hartford, or one of its agents, by return receipt requested, a copy of summons, complaint, or other pleadings, filed in the action. It is

clear from the record that plaintiff did not, prior to obtaining judgment, inquire of the Commissioner of Motor Vehicles and the North Carolina Assigned Risk Bureau whether Thomas Brunson, Jr., was an assigned risk. It is also clear from the record that had plaintiff done so, he would have been advised that neither agency had any record indicating that Thomas Brunson, Jr., owner of the vehicle, was an assigned risk. Under the facts in this case, if Thomas Brunson, Jr., was in fact an assigned risk, that information could have been obtained only from Hartford. Thomas Brunson, Jr., had never applied to have his risk assigned.

The policy issued by Hartford to Carolyn Rogers Brunson and Thomas Brunson, Jr., as insureds contained the provisions required by the statute but also contained the following provisions which were not required by statute:

"III. DEFINITION OF INSURED: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, . . .

. . .

IV. AUTOMOBILE DEFINED, TRAILERS, PRIVATE PASSENGER AUTOMOBILE, TWO OR MORE AUTOMOBILES:

(a) AUTOMOBILES. Except with respect to division 2 of coverage B and except where stated to the contrary, the word 'automobile' means:

(1) DESCRIBED AUTOMOBILE—the motor vehicle or trailer described in this policy;

. . .

(4) NEWLY ACQUIRED AUTOMOBILE—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required if the newly acquired automobile replaces an owned automobile covered by this policy. The in-

surance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

Defendant argues that this standard form policy issued by Hartford to Mrs. Brunson and renewed every year provides coverage not only for the named insured in the policy but the spouse of the named insured if the spouse is a resident of the same household. This, of course, is true. Had plaintiff been injured by the alleged negligence of Thomas Brunson, Jr., while he was driving the automobile owned by Carolyn Brunson and insured under the policy, plaintiff would most certainly have been able to determine by statutory procedures that this was an assigned risk and would have been put on notice that it would be advisable to follow the statutory requirement of notice to the carrier. The statute requires the carrier to which the risk is assigned to insure "the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured . . . "

Defendant calls attention to certain sections of the North Carolina Automobile Assigned Risk Plan as follows: Section 9, *Eligibility,* providing that a risk not be entitled to insurance if applicant *or anyone who usually drives the automobile* becomes involved in carrying on an illegal enterprise, is convicted of a felony, etc.; Section 16, *Rates,* providing that an applicant *or anyone who usually drives the motor vehicle* must pay an additional charge under certain circumstances; Section 22, *Recertification of Operator's License of Applicant or Principal of the Motor Vehicle,* providing that the designated company, after investigation of the risk applying for coverage, believes that there is reasonable doubt as to whether the applicant or *principal operator of the vehicle* could continue to operate a motor vehicle in this State, the company can request the Motor Vehicle Commission to recertify the ability of such applicant to continue to hold a license. Defendant urges that these sections and the insurance agreements which are standard in form imply that persons other than the applicant are to be classified as "assigned risk insureds" under the statute. We do not agree. The

sections cited certainly indicate that coverage will extend to a driver or drivers other than the applicant. This is indicated by G.S. 20-279.21 defining "Motor vehicle liability policy" quoted herein. However, we find nothing in the statute requiring any carrier to extend the coverage of an assigned risk policy to a replacement vehicle owned by and registered to a person other than the original named insured owner of the vehicle originally described and insured. Conceding the policy issued may be a standard form policy, it goes far beyond the statutory requirements. Conceding that under the insurance agreement between Hartford and Carolyn Brunson, Hartford was obligated to insure Thomas Brunson, Jr., as owner and insured of the Pontiac registered to him replacing the Ford automobile owned by and registered to Carolyn Brunson and described as the insured vehicle; nevertheless, this provision of the policy is not required by the State of North Carolina and it was made a part of the contract voluntarily by Hartford. In other words, Hartford, in order to be allowed to continue writing automobile liability insurance in North Carolina, was required to insure Carolyn Brunson and the Ford automobile owned by her. It was not required to insure Thomas Brunson, Jr., and the Pontiac automobile owned by him unless and until his risk was assigned to it. There is nothing in the record indicating that Thomas Brunson, Jr., was unable to obtain insurance coverage by contract.

We are of the opinion, and so hold, that plaintiff was not required to give Hartford the registered notice required by G.S. 20-279.21 (f) (1) because Thomas Brunson, Jr., was not an "assigned risk insured" under that statute. To hold otherwise would require every plaintiff to send copy of summons and complaint by registered mail to the carrier of the liability insurance of the owner of the vehicle involved in every accident resulting in litigation to avoid the pitfall of the possibility of the vehicle involved being a replacement vehicle registered in a different name than the applicant for assignment of risk. This was obviously not intended by the General Assembly. Under the provisions of G.S. 20-279.21, section (f) provides that except with respect to liability insurance written under the assigned risk plan, the liability of the insurance carrier shall to the extent of coverage required by the Act become absolute when the injury or damage covered by motor vehicle liability occurs, and no violation of said policy shall defeat or void said policy. *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482 (1960).

It follows, therefore, that the court erred in denying plaintiff's motion for summary judgment and allowing defendant's motion for summary judgment.

Reversed.

Judges BROCK and VAUGHN concur.