CHARLES FRANKLIN HIGHFILL v. WILLIAM FRED WILLIAMSON

No. 7319SC184

(Filed 10 October 1973)

1. Appeal and Error § 57; Judgments § 34— motion to set aside judgment — findings — conclusions — appellate review

   While the findings of fact by the trial court upon the hearing of a motion to set aside a judgment are conclusive on appeal when supported by competent evidence, the conclusions of law made by the judge upon the facts found by him are reviewable on appeal.

2. Rules of Civil Procedure § 55— negotiations between attorney and insurer — appearance — notice of motion for default judgment

   Negotiations between plaintiff's attorney and defendant's insurer prior to the institution of plaintiff's action did not constitute an appearance by defendant in the action which would require that defendant be given written notice of plaintiff's application for default judgment at least three days prior to the hearing on the application. G.S. 1A-1, Rule 55(b)(2).

3. Judgments § 20; Rules of Civil Procedure § 55— motion for default judgment — court's findings

   Contention that no motion for default judgment was filed by plaintiff is without merit where the default judgment entered by the court recited that the action was heard "upon the motion by plaintiff for judgment against defendant by default."

4. Judgments § 20; Rules of Civil Procedure § 55— default judgment — absence of entry of default by clerk

   Fact that no default had been entered by the clerk did not deprive a superior court judge of jurisdiction to enter a default judgment. G.S. 1A-1, Rule 55(a).

5. Judgment § 20; Rules of Civil Procedure § 55— default judgment — finding that defendant is not infant or incompetent

   Trial court's conclusion that there was no basis upon which the court which entered a default judgment could find that the defendant was neither an infant nor an incompetent person was erroneous where plaintiff's complaint alleged that defendant "is of legal age and under no legal disability." G.S. 1A-1, Rule 55(b)(2).

6. Rules of Civil Procedure § 55— default judgment — trial to determine damages — different judges

   Rule 55(b)(2) does not require the same judge who enters a default judgment to conduct the jury trial on the issue of damages and to enter the default final.

7. Judgments § 20; Rules of Civil Procedure § 55— default judgment — irrelevancy of prior settlement negotiations

   Judgment entered upon default and inquiry could not be set aside on the ground that the judge who entered the default judgment and

---

Highfill v. Williamson

---

the judge who conducted the trial to determine damages had not been advised of prior settlement negotiations between plaintiff's attorney and defendant's insurer.

8. **Judgments § 29; Rules of Civil Procedure § 55— setting aside default judgment — excessive damages — good defense**

In an action to set aside a $100,000 judgment entered upon default and inquiry, there was no competent evidence to support the trial court's determination that defendant had a good defense to the claim and that the amount of the judgment was excessive.

9. **Judgments § 28; Rules of Civil Procedure § 60— setting aside judgment — injustice — necessity for supporting evidence**

A judge may not set aside a judgment under G.S. 1A-1, Rule 60 (b) (6) for "Any other reason justifying relief from the operation of the judgment" without a showing based on competent evidence that justice requires it.

Judge BALEY dissenting.

APPEAL from an order of *McConnell, Judge,* setting aside a default judgment at 31 July 1972 Civil Session, RANDOLPH Superior Court.

On 23 September 1971, a judgment was entered on a jury verdict awarding the plaintiff $100,200 against the defendant. On 29 March 1972, the defendant made a motion to set the judgment aside. The cause came on to be heard before Judge McConnell at the 31 July 1972 Civil Session of Superior Court of Randolph County. Under date of 3 August 1972, Judge McConnell entered an order setting aside the judgment. The plaintiff appealed.

*John V. Hunter III for plaintiff appellant.*

*Henson, Donahue and Elrod by Daniel W. Donahue for defendant appellee.*

CAMPBELL, Judge.

This action was instituted 28 August 1970, and the summons and complaint were personally served upon the defendant on 31 August 1970.

The complaint alleges that the defendant is a citizen and resident of Person County, North Carolina, and is of legal age and under no legal disability; that on 24 January 1969, the plaintiff was in his Chevrolet automobile stopped for a red traffic control signal in the City of Asheboro; that the defendant, driving a Pontiac automobile, ran into the rear of the plaintiff's

vehicle; that at the time the defendant was under the influence of intoxicating liquor; that as a result of the collision, plaintiff received permanent injuries to the lumbo-sacral area of his back; that the defendant had been damaged in the amount of $100,000 for personal injuries and in the amount of $200 for property damage and also sought $25,000 in punitive damages.

The defendant filed no answer, demurrer or other pleading and procured no extension of time to do so. On 6 April 1971, Judge Gambill entered a judgment by default and directed that an inquiry as to the amount of damages be determined at a civil term of the superior court before a jury.

At the 21 September 1971 Civil Session of the Superior Court of Randolph County, issues were submitted to a jury and the jury awarded compensatory damages for personal injuries in the amount of $100,000, property damage in the amount of $200 and nothing for punitive damages. Thereupon, Judge Johnston, under date of 23 September 1971, entered a judgment in accordance with the jury verdict.

On 29 March 1972, the defendant filed a motion to set aside the judgment.

The motion sets forth the following reasons for setting the judgment aside:

1. Prior to the institution of the action, plaintiff's attorney had negotiated with James R. Price, an adjuster with the Pennsylvania National Mutual Casualty Insurance Company, regarding a possible settlement.

2. The clerk of court did not enter a default. In the two judgments which were entered, there was not a finding that the defendant was neither an infant nor an incompetent person; nor was there a finding that the court had jurisdiction over the person of the defendant and over the subject matter of the action.

3. At the time of the inquiry as to damages, the plaintiff did not give notice to the defendant.

4. The two judgments were entered by two separate judges of the superior court and neither judge was advised by the attorney for the plaintiff about negotiations for settlement prior to the institution of the action.

5. If the representative of the defendant, namely, the insurance adjuster, had known about the institution of the action, counsel would have been retained to represent the defendant.

6. The amount of the recovery is excessive and shocking to the conscience since the total medical bills amounted to less than $300, and the total cost of repairing the plaintiff's automobile amounted to $99.20.

Attached to the motion was an affidavit from James R. Price, an adjuster for the Pennsylvania National Mutual Casualty Insurance Company. This affidavit set forth that the defendant had a liability insurance policy with that insurance company. The affidavit outlined various negotiations that had taken place between John Randolph Ingram, the attorney who was representing the plaintiff, and Price. The last communication between Mr. Ingram and Mr. Price occurred on or about 18 May 1970. At the time of the hearing, Mr. Price testified as a witness; and it appeared that on 24 April 1970 Mr. Ingram made a demand for settlement of $15,000. Thereafter, the last communication was on or about 18 May 1970, and the record reveals the following:

"Q. And, you told me at that time, when I rejected your offer personally, myself, you said, did you not, 'You have a character on your hands. We have considerable background information. Take it or leave it, $1,000. We won't go any higher.'

A. That's what I said.

Q. You told me that?

A. That's what I said.

Q. I told you, 'As far as I was concerned, we would leave it.'

A. I said, 'Let me know.'

Q. I told you, 'As far as I was concerned, we would leave it.' Isn't that right?

A. I don't remember."

At the conclusion, of the hearing, Judge McConnell entered the following order:

"ORDER OF MCCONNELL, J.

THIS CAUSE COMING ON TO BE HEARD before the undersigned Judge Presiding at the July 31, 1972 civil session of Superior Court of Randolph County upon the motion of the defendant William Fred Williamson that the Court enter an order setting aside the two judgments entered in this action; and after considering the evidence offered by the parties, and considering the argument of counsel, the Court makes the following findings of fact:

I. The plaintiff, Charles Franklin Highfill, and the defendant, William Fred Williamson were involved in an automobile collision which occurred on January 24, 1969, in the City of Asheboro, Randolph County, North Carolina. Thereafter, the plaintiff retained John Randolph Ingram to represent him in this action and on or about February 5, 1969, John Randolph Ingram notified the Pennsylvania National Mutual Casualty Insurance Company that he represented the plaintiff. James R. Price, an agent and employee of the Pennsylvania National Mutual Casualty Insurance Company thereafter contacted Mr. Ingram and Mr. Price and Mr. Ingram consulted on a number of occasions thereafter regarding a settlement of the claim of Charles Franklin Highfill.

II. After being first contacted by the plaintiff's attorney on or about February 5, 1969, James R. Price, an adjuster for the Pennsylvania National Mutual Casualty Insurance Company, which company afforded liability coverage to the defendant, William Fred Williamson on the occasion complained of, contacted John Randolph Ingram regarding a settlement of this matter; that on or about March 3, 1969, he received a letter from John Randolph Ingram enclosing medical reports and bills and requesting that an appointment be made to discuss a settlement of the case; that thereafter he conferred with the plaintiff's attorney on March 13, 1969, regarding a possible settlement of the matter; that he was advised on that occasion that the matter could not be settled until the plaintiff, Charles Franklin Highfill, was released by Dr. Frank Edmondson; that on June 20, 1969, he received a letter from the plain-

tiff's attorney, John Randolph Ingram, requesting that an appointment be made so that a settlement of the case could be discussed; that on July 24, 1969, he again discussed this matter with the plaintiff's attorney and was advised that the plaintiff was again seeing Dr. Edmondson and that the matter could not be settled at that time; that the plaintiff's attorney at that time promised that he would furnish to James R. Price, up-to-date medical reports and bills and statements of lost wages; that on August 28, 1969, James R. Price again contacted the plaintiff's attorney regarding a settlement of this case and was advised by the plaintiff's attorney that he would furnish to James R. Price up-to-date medical reports and bills and statements of lost wages; that on or about December 29, 1969, he received a letter from the plaintiff's attorney requesting an appointment to discuss settlement of this case; that on January 8, 1970, James R. Price again contacted plaintiff's attorney and plaintiff's attorney at that time still had no up-to-date medical report or statement of lost wages; that James R. Price advised the plaintiff's attorney that he was willing to settle the case as soon as up-to-date medical reports and bills and statements of lost wages could be submitted; the plaintiff's attorney advised that he would obtain such up-to-date reports; that on April 2, 1970, James R. Price again discussed this matter with the plaintiff's attorney regarding settlement of this matter at which time he was advised by the plaintiff's attorney that he had no recent medical information or statement of lost wages and was advised at that time by the plaintiff's attorney that his settlement demand would be in the area of $10,000.00; that on or about April 3, 1970, he received a letter from the plaintiff's attorney enclosing a medical report from Dr. R. E. Williford; that on April 23, 1970, James R. Price received a letter from the plaintiff's attorney regarding a settlement of this matter; that on April 24, 1970, James R. Price telephoned the plaintiff's attorney and discussed settlement of this matter; that on May 12, 1970, the plaintiff's attorney forwarded to James R. Price a letter regarding settlement of this matter at which time he was advised that the plaintiff's settlement demand was $15,000.00; that on May 18, 1970, James R. Price contacted the plaintiff's attorney and extended an offer of settlement in the amount of $1,000.00; that that settlement offer was never formally rejected by the plaintiff or his attorney; that the plaintiff's attorney has furnished to James R.

Price a list of medical expenses totaling $285.50; that James R. Price has been advised that the plaintiff missed no time from his employment with the Asheboro Police Department; that James R. Price has been furnished with medical information revealing that the plaintiff's injury, if any, sustained in the collision was relatively minor; that the plaintiff obtained an estimate of the cost to repair his automobile resulting from this collision, and that that estimate totaled $99.20.

III. This action was instituted on August 28, 1970. The attorney for the plaintiff, John Randolph Ingram, did not forward copies of the summons and complaint in this action to any representative of the Pennsylvania National Mutual Casualty Insurance Company.

IV. No default has been entered against the defendant in this action, as provided by G.S. 1A-1, Rule 55(a); the plaintiff filed no motion in this action for a judgment by default as required by the provisions of G.S. 1A-1, Rule 55(b)(2); the plaintiff did not give to the defendant three days notice that he intended to apply to the Court for a judgment by default, as required by G.S. 1A-1, Rule 55 (B)(2); no affidavit was filed in this action from which the trial court judge could have made a finding that the defendant was neither an infant nor an incompetent and no such finding has been made in this case; there has been no finding by a judge in this action that the Court has jurisdiction over the subject matter of this action, as required by G.S. 1-75.11; the Superior Court Judge who entered the first judgment in this action did not hold the trial by jury to inquire into the amount of damages recoverable by the plaintiff, as provided for in G.S. 1A-1, Rule 55(b)(2); and the trial judges who entered these judgments were not informed of the extensive settlement negotiations carried on between the plaintiff's attorney and the defendant's representative and were, therefore, deprived of the opportunity to exercise their discretion as to whether or not the judgments should have been entered.

Based upon the foregoing findings of fact, the Court makes the following conclusions of law:

I. The defendant William Fred Williamson made an appearance in this action by virtue of the settlement negotiations carried on between the plaintiff's attorney and

the representative of William Fred Williamson and the defendant, William Fred Williamson, was entitled to receive written notice of the application for judgment at least three days prior to the hearing on the plaintiff's application for judgment and no such notice was given to the defendant, as required by G.S. 1A-1, Rule 55(b)(2); and

II. The plaintiff failed to comply with the provisions of G.S. 1A-1, Rule 55(a) in that no default has been entered in this action; and

III. The plaintiff filed no motion for a judgment by default as required by the provisions of G.S. 1A-1, Rule 55(b)(2); and

IV. The plaintiff failed to comply with the provisions of G.S. 1A-1, Rule 55(b)(2) in that there was no basis upon which the Court could have made a finding that the defendant was neither an infant nor an incompetent person; and

V. The plaintiff failed to comply with the provisions of G.S. 1A-1, Rule 55(b)(2) in that the same judge who entered the first judgment in this action did not hold a hearing into the amount of damages to be recoverable; and

VI. The judges who entered these judgments were deprived of the opportunity to exercise their discretion inasmuch as they had not been advised of the prior settlement negotiations carried on between the attorney for the plaintiff and the representative of the defendant; and

VII. (Omitted per JDM)

VIII. The Court concluded as a matter of law that the defendant in this action has a good defense to the plaintiff's claim in that it appears from the foregoing findings of fact that a judgment in the amount of $100,000.00 for personal injuries was unsupported by the evidence and grossly excessive; and

IX. The Court finds, in its discretion, and pursuant to the provisions of G.S. 1A-1, Rule 60(b) that the judgments entered in this action should be set aside on the grounds of mistake, inadvertence, surprise, excusable neglect and, pursuant to the provisions of G.S. 1A-1, Rule

60(b)(6) upon the grounds that the judgments entered in this action are unfair and unjust and that the interests of justice will best be served by having them set aside.

Based upon the foregoing findings of fact and conclusions of law it is ORDERED that the judgments previously entered in this action shall be and the same are hereby set aside; and it is further ORDERED that the defendant shall have 30 days from and after the entry of this order within which to prepare and file answer or otherwise plead to the complaint of the plaintiff.

This the 3rd day of August, 1972.

JOHN D. McCONNELL
Judge Presiding"

[1] The findings of fact by the trial court upon the hearing of a motion to set aside a judgment are conclusive on appeal when supported by competent evidence. The conclusions of law made by the judge upon the facts found by him are reviewable on appeal. *Moore v. Deal*, 239 N.C. 224, 79 S.E. 2d 507 (1954).

We now test the order entered by Judge McConnell in accordance with that precept.

In Findings of Fact No. 2, Judge McConnell found, "that James R. Price has been advised that the plaintiff missed no time from his employment with the Asheboro Police Department; that James R. Price has been furnished with medical information revealing that the plaintiff's injury, if any, sustained in the collision was relatively minor." The record reveals no competent evidence sustaining such a finding of fact. This finding of fact is based entirely upon hearsay testimony and supposition on the part of James R. Price.

[2] The first conclusion of law entered by Judge McConnell is that the defendant made an appearance in this action and was therefore entitled to receive written notice of the application for judgment at least three days prior to the hearing. Where a party has made an appearance in an action, three days' notice of an application for judgment must be given. *Miller v. Belk*, 18 N.C. App. 70, 196 S.E. 2d 44 (1973). While negotiations between parties may constitute an appearance in an action, no instance has been called to our attention nor have we been able to find one where an appearance was made prior to the institution of any action. In the instant case all negotiations ceased over three

months before the complaint was filed and the action instituted. Certainly no one would contend that the negotiations prior to the institution of an action would toll the statute of limitations barring such an action. We hold that no appearance in an action can be made prior to the institution of such action.

No appearance having been made in the instant case, the defendant was not entitled to three days' notice prior to the hearing on plaintiff's application for judgment, and the first conclusion of law is erroneous.

[3, 4]   In the second and third conclusions of law, Judge Mc-Connell found that the plaintiff failed to comply with the provisions of G.S. 1A-1, Rule 55(a) in that no default had been entered and Rule 55(b)(2), in that no motion for a judgment by default had been filed by the plaintiff. The record shows, however, that in the judgment of 6 April 1971, Judge Gambill stated that the action was heard "upon the motion by plaintiff for judgment against defendant by default." This was done before a judge of the superior court presiding at a session of court. It has long been held that the authority of the clerk of court to enter judgments in certain instances is concurrent with and in addition to that of the judge of the superior court. The judge of the superior court is in no way deprived of jurisdiction simply because the clerk, in certain instances, has concurrent jurisdiction. *Rich v. R.R.*, 244 N.C. 175, 92 S.E. 2d 768 (1956). *Whaley v. Rhodes*, 10 N.C. App. 109, 177 S.E. 2d 735 (1970). We hold that the default entered by Judge Gambill was ample and sufficient. Conclusions of law Nos. 2 and 3 are erroneous.

[5]   In the fourth conclusion of law, Judge McConnell found that the plaintiff failed to comply with Rule 55(b)(2) in that there was no basis upon which the court could find that the defendant was neither an infant nor an incompetent person. In the verified complaint it was stated: "DEFENDANT is a citizen and resident of the County of Person, State of North Carolina, and is of a legal age and under no legal disability." This conclusion of law is erroneous.

[6]   The fifth conclusion of law was to the effect that plaintiff failed to comply with Rule 55(b)(2) in that the same judge who entered the first judgment in this action did not hold a hearing on the amount of damages to be recoverable. Rule 55 (b)(2) does not require the same judge who enters the default

to likewise conduct the jury trial and enter the default final. Judge Gambill, who entered the first default, specifically ordered that the case be referred to a civil term of superior court before a jury to determine the amount of damages. This was done, and the fact that Judge Johnston was holding the court at which this occurred rather than Judge Gambill is in no way erroneous. Under our rotation system of judges, this would be the more natural course for the case to follow. There certainly was no error in pursuing this method.

[7] The sixth conclusion of law was to the effect that Judges Gambill and Johnston, who entered the judgments, were not advised of prior settlement negotiations. Such settlement negotiations would be entirely irrelevant, and there was no need to advise Judge Gambill and Judge Johnston pertaining thereto. *Sanders v. Chavis,* 243 N.C. 380, 90 S.E. 2d 749 (1956) ; *Swain v. Insurance Co.,* 253 N.C. 120, 116 S.E. 2d 482 (1960).

[8] There was no conclusion of law No. 7, and the next conclusion of law, No. 8, was to the effect that the defendant had a good defense to the claim and that a judgment of $100,000 was grossly excessive. There is no evidence to support this conclusion of law, and as previously pointed out, the findings of fact about the excessive recovery was based upon hearsay and supposition on the part of the insurance company adjuster, Mr. Price. There is no evidence in this record as to what occurred in the trial before the jury conducted by Judge Johnston when the amount of damages was determined.

[9] Conclusion of Law No. 9 is based upon a discretionary finding that the judgment should be set aside on the ground of mistake, inadvertence, surprise, excusable neglect and pursuant to Rule 60(b)(6). There is nothing in this record to show or establish mistake, inadvertence, surprise or excusable neglect on the part of the defendant. Rule 60(b)(6) provides that the judge may set aside a judgment for "(6) Any other reason justifying relief from the operation of the judgment."

This is an addition and it certainly goes beyond the grounds for relief that would have been available under older procedures. This rule is discussed in 11 Wright and Miller, Federal Practice and Procedure, § 2864. While this rule gives the court ample power to vacate a judgment whenever that action is appropriate to accomplish justice, nevertheless, we hold that a judge cannot do so without a showing based on competent evidence that justice requires it. In the instant case there has been no showing

Highfill v. Williamson

whatsoever of any miscarriage of justice. While the damages in this case may have been excessive, nevertheless, there is no showing to that effect in this record. Hearsay and supposition do not constitute evidence. Hard cases often make bad decisions. The defendant in this case has shown nothing. The insurance company is the unfortunate victim, but that was a business risk taken at the time when the policy was issued. Other companies have sustained similar losses. *Beasley v. Indemnity Co.*, 11 N.C. App. 34, 180 S.E. 2d 381 (1971) ; affirmed without further discussion in 280 N.C. 177, 184 S.E. 2d 841 (1971).

We hold that on the record in this case the order of Judge McConnell vacating the judgments entered by Judges Gambill and Johnston was in error.

Reversed.

Judge VAUGHN concurs.

Judge BALEY dissents.

Judge BALEY dissenting.

I agree with the court below that this default judgment for $100,200.00 should be vacated and the case heard on its merits.

The entry of a default judgment is a harsh and drastic action. Courts generally favor giving every litigant a fair opportunity to present his side of a disputed controversy. "Where there is a genuine dispute concerning material facts, the philosophy of the . . . rules of procedure favor trial on the merits in contra-distinction to judgments by default." *Newberry v. Cohen,* 374 F. 2d 320, 323 (D.C. Cir. 1967). Therefore, "on a motion for relief from the entry of a default or a default judgment, all doubts should be resolved in favor of the party seeking relief." 10 Wright & Miller, Federal Practice and Procedure, § 2693, at 313; *accord, Whaley v. Rhodes,* 10 N.C. App. 109, 111, 177 S.E. 2d 735, 737. "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." 11 Wright & Miller, *supra,* § 2857, at 160.

---

Highfill v. Williamson

---

Rule 60(b) of the North Carolina Rules of Civil Procedure provides:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
>
> *  *  *
>
> (6) Any other reason justifying relief from the operation of the judgment."

Rule 60(b)(6) has been described as "a grand reservior of equitable power to do justice in a particular case." 7 Moore's Federal Practice, ¶ 60.27[2], at 375. The North Carolina Supreme Court has stated that its "broad language . . . 'gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.' " *Brady v. Town of Chapel Hill*, 277 N.C. 720, 723, 178 S.E. 2d 446, 448.

"Under our Rules of Civil Procedure, the determination of whether an adequate basis exists for setting aside the entry of default and the judgment by default rests in the sound discretion of the trial judge. *See Whaley v. Rhodes*, 10 N.C. App. 109, 177 S.E. 2d 735 (1970)." *Acceptance Corp. v. Samuels*, 11 N.C. App. 504, 510, 181 S.E. 2d 794, 798.

In this case the trial court, in the exercise of its discretion, has vacated this judgment as "grossly excessive." The court has found that "the interests of justice will best be served" by setting it aside. In my view there is sufficient evidence when considered in its most favorable light to support this decision.

The affidavit of James R. Price, an insurance adjuster for Pennsylvania National Mutual Casualty Insurance Company, which provided liability insurance for the defendant, recounted in detail extensive negotiations with plaintiff's attorney seeking a settlement prior to the institution of the action. Price's affidavit which was uncontradicted in any material part set out the maximum demand of plaintiff's attorney at $15,000.00, the medical expenses incurred at $285.50, and the car repair at $99.20. At the hearing plaintiff's attorney admitted receipt of a $1,000.00 offer from the insurance company made in a letter dated 18 May 1970 which read as follows:

> "This will supplement our telephone conversation of May 15, 1970, wherein I extended an offer of $1,000 in settlement of the claim of Charles Franklin Highfill.

"We await your reply."

Even though such letter specifically requested a reply, there was no rejection or acceptance of this offer and suit was instituted and default judgment obtained without notice to the representative of defendant with whom negotiations were in progress and who would be responsible for the payment of the judgment. These factors were available for the trial judge as well as the record and argument of counsel. His decision should be upheld unless there is a clear abuse of discretion which does not here appear.

Rule 60(b)(6) was designed to give the trial court authority to prevent injustice where procedural exactitudes would otherwise require violation of the basic rules of fair play. Judge McConnell has used it for that purpose. My vote is to affirm his judgment.